H2SJHUNC                Conference

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

PATRICIA HUNTER,

            Plaintiff,

       v.                              16 Civ. 8779 ER

PALISADES ACQUISITION XVI, LLC, et al.,

            Defendants.

------------------------------x
                                       February 28, 2017
                                       11:00 a.m.


Before:

              HON. EDGARDO RAMOS,

                                       District Judge



                      APPEARANCES


CAMBA LEGAL SERVICES, INC.,
     Attorneys for plaintiff
BY:  DIVYA SUBRAHMANYAM, Esq.
     AHMAD KESHAVARZ, Esq.
              Of counsel

SPECTOR GADON & ROSEN, PC (PA)
     Attorneys for defendants
BY:  JONATHAN JUSTIN GREYSTONE, Esq.
              Of counsel
```

Case 1:16-cv-08779-ER   Document 39   Filed 05/04/17   Page 2 of 14      2
H2SJHUNC                        Conference

1                (In open court)

2                (Case called)

3            THE COURT:  Good morning.  Please be seated.

4            MR. GREYSTONE:  Your Honor, I represent the defendant Palisade Acquisition XVI.

6            For the record, I also represent Palisades Collection, LLC who was a defendant identified in the original complaint by plaintiffs.

9            THE COURT:  This matter is on for premotion conference at the request of Mr. Greystone.  However, this is the parties' first appearance before me.  So, Mr. Keshavarz or Ms. Subrahmanyam, let me begin with you and tell me a little bit about the case and tell me also what the status is of the law firm and the lawyer.

15           MR. KESHAVARZ:  Yes, your Honor.

16           THE COURT:  You can remain seated.  Just speak directly into the microphone.

18           MR. KESHAVARZ:  Yes, your Honor.  This is a claim for violations of the FDCA and GBL 349 and for conversion.

20           Palisades was a judgment creditor that obtained a default judgment based on sewer service for a debt my client never owed.  My client found out about the debt when she tried to get a modification to save her home.

24           THE COURT:  How many years after that did that happen?

25           MR. KESHAVARZ:  Seven years.  Of course, there is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  tolling because of under Sykes because she didn't know, she
2  could not reasonably have known but for the false affidavit of
3  service that there was a suit and default judgment against her.
4             So she had difficulty modifying her loan and putting
5  her house at risk.  She went pro se to file an order to show
6  cause to vacate the default judgment, which was granted.  The
7  case was later dismissed.  That is within the GBL 349
8  three-year limitations period.
9             Subsequent to that, within one year of the CPA period,
10 Palisades had hired Sharinn & Lipshie, collection law firm,
11 that freezes her bank account based on the vacated judgment.
12            THE COURT:  How many years after the judgment did the
13 law firm do that?
14            MR. KESHAVARZ:  About two years, a year or two after
15 the judgment was vacated, I believe.
16            MS. SUBRAHMANYAM:  Judgment was obtained in 2007.  She
17 vacated in 2014, and they executed in 2015.
18            THE COURT:  They executed eight years after they got
19 judgment?
20            MR. KESHAVARZ:  Yes, eight years after they got
21 judgment, one year after judgment was vacated.
22            THE COURT:  Do you have any idea what triggered the
23 law firm to decide to go to try to enforce that judgment?
24            MR. KESHAVARZ:  I don't know.
25            THE COURT:  Okay.

1       MR. KESHAVARZ:  So she went pro se, and she sent a
2   letter to Sharinn & Lipshie that says the judgment was vacated,
3   here is a copy of the order, release of money.  They didn't
4   release the money.
5       THE COURT:  How much money did they take?
6       MR. KESHAVARZ:  They took out $2,000.
7       MS. SUBRAHMANYAM:  Just over a thousand.
8       MR. KESHAVARZ:  Just over a thousand, leaving her
9   $800.00 in the bank account.  Sharinn & Lipshie said please
10  release the copy, here is a copy of the vacated judgment.  They
11  did not release the money.  She had to go to Gamba Legal
12  Services.  Gamba Legal Services sends a threatening letter.
13      Sharinn & Lipshie releases the money.  The claims that
14  arise from that are conversion and after the CPA claim for
15  executing on a vacated judgment, and there are a couple of
16  other claims.  Under the FTC PA, there is a requirement for
17  what is called a "G" notice that would be required to be sent
18  by the law firm.  It is very important in this case because.
19      THE COURT:  A "G," as in the letter G?
20      MR. KESHAVARZ:  Yes.  That is out of the statute, 1692
21  (g), 15 U.S.C. 1692 (g).  In this case, it is very important
22  because a debt collector has to send that as part of their
23  initial communication.  Sharinn & Lipshie's initial
24  communication was restraining her bank account, forwarding a
25  copy of the bank restrict.

1          Before they did that, within five days of that they
2    had to send this 1692 (g) notice.  It is important because  my
3    client could have sent a copy of the vacated judgment and
4    stopped the collection before they executed on her account.  So
5    that is a very powerful remedy that apparently they never send,
6    Sharinn & Lipshie never sends when they get a judgment account.
7    Apparently Palisades does not require their new law firms to
8    send it.  It is a powerful --
9          THE COURT:  What about if the judgment had not been
10   vacated?  Let's say Sharinn & Lipshie goes through the entire
11   process, they get a judgment against her, it is all legit,
12   let's say, for the purposes of this argument.  They then just
13   go directly to the bank and say --
14         MR. KESHAVARZ:  If it is the same collection law firm
15   and judgment creditor.  Here it is the same judgment creditor,
16   but a different collection law firm.  I believe Wolpoff &
17   Abramson was the law firm that obtained the default judgment.
18         There is a split of authority on that issue.  The
19   current trend especially in the Southern District is the new
20   law firm has to provide the "G" notice for the exact reason in
21   this case.  If the debt is extinguished, then the consumer has
22   a powerful right to force the debt collector to cease
23   communications, cease attempt to collect the debt until they
24   verify it.  That is not done.  Apparently it is a pattern and
25   practice never to do that.  That allows for punitive damages

1  collection under GBL.
2           THE COURT:  The split is within the Second Circuit or
3  Southern District?
4           MR. KESHAVARZ:  Nationally.  I think the majority of
5  the cases, Federal District Court cases in New York, if not all
6  of them, say you have to give a "G" notice.  My co-counsel will
7  probably speak to that better than I can.
8           MS. SUBRAHMANYAM:  I think that is what I think.
9           MR. KESHAVARZ:  The other district court jurisdictions
10 around the country, earlier decisions have gone the other way.
11          THE COURT:  What about the law firm and the lawyer?
12          MR. KESHAVARZ:  The lawyer and law firm is liable for
13 their own acts because they took the acts in conversion,
14 executing on vacated judgment, not giving a "G" notice and also
15 one additional thing we haven't mentioned is they have to do
16 what is called meaningful attorney review before they send out
17 a written communication.
18          Here the written communication would be the
19 information subpoena and bank restraint where they took the
20 money out of the bank account.  A copy of that communication
21 was also sent to the consumer.  Before they can send any
22 communication to the consumer from a law firm, particularly
23 with attorney's signature, the attorney has to do a meaningful
24 attorney review of the facts and circumstances of the account.
25          Here if they checked on the court's web site, spent 60

1   seconds checking the court's web site, they would have seen the
2   judgment was vacated.  They don't do that.  Apparently they
3   never do that.  That is also a punitive damage question under
4   GBL 349.
5          THE COURT:  Bring the microphone closer to you.
6          MR. KESHAVARZ:  Palisades is jointly and severally
7   liable for everything Sharinn & Lipshie does.  There are a
8   number of cases in the Southern District, Ulterie, Gomez and a
9   few others, Plumber.  So regardless of what happens with
10  Sharinn & Lipshie, Palisades is liable.
11         THE COURT:  What is the status of the law firm and the
12  lawyer?  Have they been served?  Have they answered?
13         MR. KESHAVARZ:  Yes and yes.  I am a little surprised
14  they're not here.  I am not sure why.  There will be a
15  practical issue about resolving the case, and that is getting
16  their insurance policy.  They apparently never gave us their
17  insurance policy, and for settlement purposes, getting the
18  insurance carrier involved is going to be crucial because --
19         THE COURT:  Assuming they want to settle?
20         MR. KESHAVARZ:  Sorry?
21         THE COURT:  Assuming they want to settle?
22         MR. KESHAVARZ:  That is true.  That is true.
23         THE COURT:  Okay.  Mr. Greystone.
24         MR. GREYSTONE:  Yes, your Honor.  With regard to the
25  hearing today, the hearing today was requested by myself for

1   the purposes of giving the court a basis for filing a motion to
2   dismiss the complaint.
3            However, that was the ERISA complaint was filed, 181
4   paragraphs, 25 pages, and so close to 200 pages of exhibits on
5   behalf of my clients at the time, Palisades Acquisition XVI and
6   Palisades Collection, LLC.  After I filed my letter requesting
7   this conference on the original complaint, plaintiff counsel
8   indicated in their response to your Honor that two things:
9            One, that they were going to drop Palisades
10  Collection, LLC as a defendant from the original complaint and
11  not pursue that defendant any further, that my client and they
12  would be filing an amended complaint in this action, as they
13  are allowed to do so once without the court permission.
14           Ultimately plaintiff counsel did file an amended
15  complaint, and an amended complaint was filed late Friday
16  afternoon, this past Friday afternoon.  That amended complaint
17  did, in fact, drop one of the three defendants from the
18  original complaint, again Palisades Collection, LLC, my
19  clients.
20           However, that amended complaint does not contain 181
21  paragraphs; it contains 187 paragraphs for two defendants and
22  close to 200 pages of exhibits, on a matter involving the
23  attempted garnishment of a bank account at JP Morgan Chase when
24  allegedly the judgment had been vacated.  There are 25 pages,
25  187 paragraphs, not including subparts, and 200 pages on that

1    one single act.
2              Your Honor, I looked for the first time at the amended
3    complaint yesterday afternoon.  As your Honor is aware, I have
4    under the federal civil procedure 15 days to respond to that
5    amended complaint.  I will be candid with your Honor and say to
6    the court that if this amended complaint is anything close to
7    what the original complaint was like, my motion is that a
8    motion to dismiss is absolutely in order.
9              However, my client, the remaining defendants that I
10   represented, Palisades Acquisition XVI has its own general
11   counsel, your Honor.  I have not had an opportunity to discuss
12   the amended complaint.  I e-mailed the amended complaint to my
13   client Monday after I had an opportunity to review it in the
14   afternoon.  General Counsel's Office has that amended complaint
15   now.  I have not had an opportunity to find out from General
16   Counsel's Office what they want to do with regard to our
17   responding to that amended complaint.  As an aside, your Honor,
18   I would like to make an apology to the court.
19             I attempt at all times to follow the Federal Rules of
20   Civil Procedure, the local rules of the jurisdiction I am
21   practicing in and the personal procedures and protocols of the
22   Judge, the court that I am before assigned the case.  I
23   apologize for not following that procedure by filing the motion
24   to dismiss first before requesting the usual indulgence of a
25   premotion conference.

1     THE COURT:  Certainly.  You say you do not know, as
2  you sit here, whether you want to go forward with the motion to
3  dismiss?
4     MR. GREYSTONE:  I cannot make that representation to
5  your Honor because even if I wanted to do personally, as your
6  Honor knows, I would have to get authority from my client to do
7  that.
8     THE COURT:  I understand.  Let me ask Mr. Keshavarz,
9  besides the different parties, do we now have three defendants
10 in this case?
11    MR. GREYSTONE:  No, your Honor.  If I may, there was
12 originally three defendants in the original complaint, the law
13 firm and the lawyer, Palisades Collection, LLC and Palisades
14 Acquisition XVI.
15    THE COURT:  That makes four defendants.
16    MR. GREYSTONE:  That is actually true, there were four
17 defendants.  Then when the amended complaint was filed, one
18 defendant was dropped.  That was one of my clients that was
19 Palisades Collection, LLC who was no longer a defendant in the
20 case, your Honor.
21    THE COURT:  So let me ask Mr. Keshavarz, is there any
22 substantive difference between, differences between the
23 original and amended complaints?
24    MR. KESHAVARZ:  I don't believe so, just taking out
25 the service.  I don't believe so.

1           THE COURT:  So the deficiencies that you identified,
2    Mr. Greystone, if such they are, remain in the complaint, the
3    legal deficiencies at least?
4           So, obviously, I am going to absolutely give you an
5    opportunity to speak with your client about what it is or how
6    it is they may want to proceed.  Just give me some timeline
7    that we can mark down in the docket as to when things will
8    happen.
9           MR. GREYSTONE:  Your Honor, my client is very
10   responsive to me, and I have represented this company for a
11   very long time, their general counsel's office.
12          I believe that even though I've got 15 days under the
13   rules, that I would be able to -- I would know by Monday or
14   Tuesday next week whether my client is going to direct me to
15   answer the complaint or whether or not my client wants me to
16   file another motion to dismiss the complaint under 12 (b), and
17   then, of course, send your Honor a letter.  Would your Honor be
18   willing --
19          THE COURT:  No, no, you won't have to come back if
20   that is the case.  You won't have to submit another premotion
21   letter, okay?
22          MR. GREYSTONE:  Thank your Honor.
23          THE COURT:  Why don't we say 30 days from today you
24   either answer or move?
25          MR. GREYSTONE:  Thank your Honor.

1    THE COURT:  Mr. Keshavarz, in the event that there is
2 a motion, 30 days to respond and two weeks to reply, okay?
3    MR. KESHAVARZ:  Yes, your Honor.
4    MR. GREYSTONE:  Your Honor, my client is interested in
5 some early resolution of this case.  I don't know what, if the
6 court has any procedures with regard to any early mediation of
7 the case?
8    THE COURT:  I can certainly refer you to the assigned
9 magistrate judge or to our mediation panel, at your pleasure.
10    MR. GREYSTONE:  My client has already made an $18,000
11 offer of judgment, excluding attorney's fees, which was
12 rejected in the requested settlement demands from plaintiff's
13 counsel.
14    As your Honor is aware, the statutory damages that a
15 plaintiff can collect in a case like this is a maximum of
16 $1,000.00.  As your Honor's also aware, this is a fee-shifting
17 statute, which means the longer the case goes on, the greater
18 the attorney's fees are on the plaintiff's side which,
19 accumulated with the alleged value of the claim, make the case
20 slightly more difficult to resolve, which is why my client is
21 interested in early resolution since only a complaint has been
22 filed and this hearing today basically.
23    THE COURT:  Okay.  Mr. Keshavarz?
24    MR. KESHAVARZ:  On those points, there is no limit on
25 the actual damages, only for statutory damages FTC PA.  We

1     allege garden variety emotional distress, and the Second
2     Circuit has upheld awards between 30,000 and 125,000 in garden
3     variety emotional distresses.  For conversion and GBL 349,
4     there are punitive damages questions for those issues, so I
5     would say that in terms of evaluation.
6              One thing we need to know in terms of punitive damage
7     is pattern and practice evidence.  If they stipulate they never
8     have a "G" notice sent when they forward it to another lawyer,
9     if they stipulate they never do an attorney review, that helps
10    a lot in terms of the punitive damage evaluation.
11             THE COURT:  You don't need to negotiate that.  So the
12    question to you, Mr. Keshavarz, is do you want me to refer this
13    to the assigned magistrate or mediation panel?
14             MR. KESHAVARZ:  At this time, I don't think that would
15    be helpful, your Honor.
16             THE COURT:  So I am not in the practice of rushing
17    people to mediation or settlement if they tell me they do not
18    believe it would be fruitful.  Let's see how this goes.
19    However, I am very cognizant of the costs involved and I would
20    be very cognizant of any attempt to write-up costs
21    unnecessarily.
22             MR. GREYSTONE:  Thank your Honor.
23             THE COURT:  Ms. Rivera.
24             THE CLERK:  So the answer or the motion is due March
25    30, reply to the motion or response to the motion is due May 1.

```
H2SJHUNC                        Conference
```

1   The reply is due May 15th.
2              THE COURT:  Okay.  Everyone have those dates?
3              MR. GREYSTONE:  Yes, your Honor.
4              MR. KESHAVARZ:  Yes, your Honor.
5              THE COURT:  Unless there is anything else?
6              MR. KESHAVARZ:  No, your Honor.
7              MR. GREYSTONE:  No.
8              THE COURT:  We're adjourned.
9              (Court adjourned)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25