UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
PATRICIA HUNTER

           Case No.: 1:16-cv-08779-ER

       Plaintiff,
   -against-

PALISADES ACQUISITION XVI, LLC
SHARINN & LIPSHIE, P.C.
HARVEY SHARINN

       Defendants.
-------------------------------------------------------------------X


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PALISADES ACQUISITION XVI, LLC'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................... 5

II.   LEGAL STANDARD ................................................................................... 6

III.  ARGUMENT .............................................................................................. 7

A. The Public Policy of the FDCPA: Protecting the Least Sophisticated Consumer……………..7

B. Plaintiff has stated a claim against Palisades for violations of the FDCPA…………………...7

    1.   Federal law does not require plaintiffs to precisely plead legal theories or to match facts to statutory subsections. ...................................................................... 7

    2.   Ms. Hunter has made out facially plausible FDCPA claims. ........................................ 9

        i.   Palisades violated 1692e by falsely misrepresenting to Ms. Hunter there was an enforceable judgment. ................................................................................... 10

        ii.  Palisades violated 1692f by restraining and then executing on her bank account without a judgment. ................................................................................... 11

        iii. Defendants violated 1692 by S&L's failure to perform a meaningful attorney review prior issuing the information subpoena and bank restraint. ........................................ 12

        iv.  Defendants violated the FDCPA by  S&L's failure to  provide a 1692g notice ........ 15

        v.   1692c violation ........................................................................................ 17

        vi.  Statute of limitations ............................................................................... 17

C.  Plaintiff states a claim that Palisades violated GBL 349 both through its own actions and through its debt collection law firm, the S&L Defendants…………………………………...17

    1. What Palisades does not challenge ............................................................... 18

    2. Plaintiff has made out a claim that Defendants' restraint of her bank account, communications regarding this restraint, and failure to lift the restraint violated GBL § 349........................................................................................... 18

    3. Ms. Hunter's other GBL § 349 claims, which Palisades does not address, are ............... 21 valid.................................................................................................. 21

D. Palisades and the S&L Defendants converted the money in Ms. Hunter's bank  account; the Court should additionally not dismiss Plaintiff's request for punitive damages……………..23

    1.   Plaintiff pleads facts stating a "facially plausible" claim for conversion. .................... 23

    2.   Palisades is vicariously liable for this conversion. ...................................... 24

    3.   Defendants motion to dismiss Plaintiff's request for punitive damages is premature.. 27

E. Plaintiff's Exhibits "C" and "S" are material and relevant to the First Amended Complaint and should not be stricken…………………………………………………………………………29

IV.  CONCLUSION ....................................................................................... 29

# TABLE OF AUTHORITIES

## CASES

*Abbas v. Dixon,* 480 F.3d 636 (2d Cir. 2007) .............................................................. 24

Amusement Indus., Inc. v. Stern, 693 F.Supp.2d 301 (S.D.N.Y.2010) ........................ 30

*Avila v. Rubin,* 84 F.3d 222 (7th Cir. 1996) ................................................................. 15

*Bailey v. Glover,* 88 U.S. 342 (1874) ........................................................................... 25

*Baptist v. Global Holding & Inv. Co., L.L.C.*, 2007 WL 1989450 (E.D.N.Y. 2007) .................. 13

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991) .................... 28

*Bhattal v. Grand Hyatt-New York*, 563 F. Supp. 277 (S.D.N.Y. 1983) ................................... 26, 27

*Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246 (S.D.N.Y. 2011) .............................. 13

*Caballero v. Anselmo*, 759 F. Supp. 144 (S.D.N.Y. 1991) ................................................... 31

*Clients' Sec. Fund of State v. Grandeau*, 72 N.Y.2d 62 (Ct. App. 1988) ................................. 27

*Colavito v. New York Organ Donor Network, Inc.*, 827 NYS 2d 96 (Ct. App. 2006) ................ 25

*Currier v. First Resolution Inv. Corp.*, 762 F.3d 529 (6th Cir. 2014) .................................... 13, 14

Denton v. McKee, 332 F.Supp.2d 659 (S.D.N.Y. 2004) .................................................... 30

*Diaz v. Portfolio Recovery Assocs., LLC,* 2012 WL 661456 (E.D.N.Y. Feb. 28, 2012), *report and
recommendation adopted*, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) ............................... 23

*Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976
(E.D.N.Y. May 24, 2012) ........................................................................................... 16

*Eastman Kodak Co. v. Camarata*, 2006 WL 3538944 (W.D.N.Y. 2006) ................................ 26

*Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130 (2d Cir. 2010), *cert. denied*, 130 S. Ct. 3333
(2010) .................................................................................................................... 8

*Fils-Aime v. Ryder TRS, Inc.*, 837 N.Y.S.2d 199 (Ct. App. 2007) ....................................... 27

*Fox v. Citicorp. Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994) ...................................... 14

*Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201 (Ct. App. 2001) ............................. 24

*Gallego v. Northland Group, Inc.*, 814 F.3d 123 (2d Cir. 2016) .......................................... 13, 14

*Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031 (W.D. Wis. 2002) ............................ 10

*Hernandez v. Williams, Zinman & Parham PC*, 2016 WL 3913445 (9th Cir. July 20, 2016) ..... 18

*Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85 (2d Cir. 2008) .......................................... 8

*Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) ............................................................ 9, 10, 11

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) .................................................. 24

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ..................................... 14

*Link v. Wabash R. Co.,* 370 U.S. 626 (1962) .................................................................. 28, 29

*Lipsky v. Commonwealth v. United Corp.*, 551 F.2d 887 (2d Cir. 1976) ............................... 32

*Lovelace v. Stephens & Michaels Associates, Inc.*, No. 07-10956, 2007 U.S. Dist. LEXIS 83281
(E.D. Mich. Nov. 9, 2007) ......................................................................................... 14

Mahan v. Retrieval-Masters Credit Bureau, Inc., 777 F. Supp. 2d 1293(S.D. Ala. 2011) ........... 10

*Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451 (S.D.N.Y. 2014) ................................. 24

*Martsolf v. JBC Legal Grp., P.C.*, 2008 WL 275719 (M.D.Pa Jan. 30, 2008) .......................... 28

*Mazart v. State*, 441 N.Y.S.2d 600, 605 (Ct. Claims 1981) ................................................ 28

Meyer v. Holley, 537 U.S. 280 (2003) ........................................................................... 27, 28

Midland Funding, LLC v. Giraldo, 961 N.Y.S.2d 743 (Nassau Cty Dist. Ct. 2013) ................... 22

*Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292 (2d Cir. 2003) ..................................... 15

*Newbro v. Freed*, 409 F.Supp.2d 386 (S.D.N.Y. 2006) ..................................................... 26

*Oei v. N. Star Capital Acquisitions, LLC,* 486 F.Supp.2d 1089 (C.D.Cal. 2006)........................ 28
*Okyere v. Palisades Collection LLC*, 961 F. Supp. 2d 508 (S.D.N.Y. 2013)............. 11, 14, 28, 29
*Oneida Indian Nation v. County of Oneida*, 617 F.3d 114 (2d Cir. 2010) ..................................... 9
*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20 (Ct.
    App. 1995) ....................................................................................................................... 21, 22
*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380 (1993).......................... 28
*Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2d Cir. 1989) ........................................ 8
*Polanco v. NCO Portfolio Mgmt.*, 930 F. Supp. 2d 547 (S.D.N.Y. 2013) .................................. 14
*Polanco v. NCO Portfolio Mgmt., Inc. (Polanco II)*, 132 F. Supp. 3d 567 (S.D.N.Y. 2015). 28, 29
*Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472 (1st Dep't 1995). ............................................ 26
*Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014)................................... 13
Security Pacific Mortg. & Real Estate Servs., Inc. v. Herald Ctr., Ltd., 891 F.2d 447 (2d Cir.
    1989) (per curiam) ................................................................................................................. 27
*St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010)...................................... 30
*Stuart v. Stuart*, No. 12–CV–5588, 2013 WL 6477492 (S.D.N.Y. Dec. 10, 2013).................... 24
*Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000).................................................................... 20, 32
*Sutton v. Fin. Recovery Servs.*, 121 F. Supp. 3d 309 (E.D.N.Y. 2015) ...................................... 14
*Taylor v. Heath W. Williams, L.L.C.*, 510 F. Supp. 2d 1206 (N.D. Ga. 2007) ........................... 13
Tocco v. Real Time Resolutions, Inc., 48 F. Supp. 3d 535 (S.D.N.Y. 2014)................................ 18
*Velazquez v. NCO Fin. Sys., Inc*., No. 11–CV–00263, 2011 WL 2135633 (E.D.Pa. May 31,
    2011) ..................................................................................................................................... 13
*Williams v. Coca Cola Co.*, 2017 WL 1214503 (N.D.N.Y. Mar. 31, 2017)................................ 30
Willman v. Zelman & Associates, LLC, 2012 WL 811512, at *5 (S.D.N.Y. 2012).................... 30

## STATUTES

15 U.S.C. § 1692.......................................................................................................................... 5, 7
15 U.S.C. § 1692c ...................................................................................................... 8, 9, 10, 18
15 U.S.C. § 1692e ...................................................................................................... 9, 10, 11
15 U.S.C. § 1692e(10) ............................................................................................................... 11
15 U.S.C. § 1692e(2) ................................................................................................................. 11
15 U.S.C. § 1692e(5) ................................................................................................................. 11
15 U.S.C. § 1692f ................................................................................................................. passim
15 U.S.C. § 1692g .................................................................................................... 9, 10, 17
28 U.S.C. §1367........................................................................................................... 24, 30
Fed. R Civ. P. 12(f)..................................................................................................................... 31
N.Y. C.P.L.R 321(a) .................................................................................................................. 28
N.Y. Gen. Bus. Law § 349................................................................................................... passim
NY Professional Disciplinary Rule 1.2(a). ............................................................................... 28

## OTHER AUTHORITIES

2A N.Y. Jur. 2d Agency § 1........................................................................................................ 27
Restatement (Third) of Agency, § 1.01 ..................................................................................... 27
S. Rep. No. 382, 95th Con., 1st Sess. 5 ...................................................................................... 7

# I.      PRELIMINARY STATEMENT

In the instant action, Ms. Hunter brings suit against Palisades Acquisition XVI, LLC (Palisades")the putative judgment creditor; Sharinn & Lipshie, P.C., Palisades' debt collection law firm; and Harvey Sharinn, the principal of Sharinn & Lipshie, P.C. and the attorney who signed the unlawful deceptive restraining notice and information subpoena (collectively the "S&L Defendants"). *Id.* ¶ 4. Ms. Hunter asserts claims against all three defendants for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. and N.Y. Gen. Bus. Law § 349, and for committing conversion by executing on Ms. Hunter's bank account for a vacated judgment. *Id.*

In 2007, Ms. Hunter was sued by Palisades in Bronx Civil Court for a debt she did not owe. First Amended Complaint (FAC) [DE 30] ¶¶ 15,19. Ms. Hunter was never served with the papers in this lawsuit. *Id.* ¶¶ 22-32. Nevertheless, Palisades, which is fully integrated into related entities with history of systematic sewer service, filed a false affidavit of service with the Court, sworn to by a process server with a history of improper service. *Id.* ¶¶ 23-25,33-35, 36 fn. 1. Palisades obtained a default judgment against Ms. Hunter on June 19, 2007. *Id.* ¶ 45. The law firm that represented Palisades in the action was Wolpoff & Abramson LLP. *Id.* ¶ 59. Wolpoff & Abramson was abruptly shut down in 2010 after the Minnesota Attorney General sued it and related entities for perpetrating a massive scheme of fraudulent debt collection. *Id.*  ¶ 60.

Several years later, when Ms. Hunter was applying for a loan modification to make her family's mortgage payments more affordable and prevent foreclosure, she discovered there was a judgment against her. *Id.* ¶¶ 48-49. She was told she could not proceed with the modification until she dealt with the judgment. *Id.* Representing herself *pro se*, Ms. Hunter filed an Order to Show Cause and was able to vacate the judgment and get the case dismissed. *Id.* ¶¶ 50-58. Ms.

Hunter believed she was free of the matter. *Id.* ¶137.

Over a year later, Defendant Palisades through its debt collection law firm Sharinn & Lipshie unlawfully issued a restraining notice and information subpoena – signed by Defendant Harvey Sharinn – to JP Morgan Chase asking the bank to restrain Ms. Hunter's account. *Id.* ¶ 66. In this notice, Palisades, through the S&L Defendants, purported to be the judgment creditor. *Id.* But Defendants knew or should have known that the judgment had been vacated and the case had been dismissed, as these facts are public record and easily accessible for free on the New York state eCourts website. *Id.* ¶¶ 70-73. Then, Defendants failed to provide Ms. Hunter a written notice of her rights to force Defendants to cease all collection attempts, including executions, which they were required to send, as a practical matter, prior issuing the information subpoena and restraining notice.[1] *Id.* ¶¶ 99-102.

To comply with the unlawfully issued restraining notice, Chase froze Ms. Hunter's bank account, and then withdrew nearly $1,000 of her funds. *Id.* ¶¶ 95-112. Ms. Hunter contacted Palisades through S&L, asking them to lift the unlawful restraint and providing them with a copy of the order vacating the judgment, but Defendants ignored her pleas and the order. *Id.* ¶¶ 115-117. Because Defendants enforced the non-existent judgment – and then forged ahead in the face of Ms. Hunter's proof – Ms. Hunter was deprived of her money, could not deposit her paychecks or pay her bills on time, incurred numerous fees, and suffered serious anxiety and emotional distress. *Id.* ¶¶ 133-34.

## II.     LEGAL STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

[1] As discussed further below, while technically the 1692g(a) notice could be provided 5 days after the initial communication, the 1692g(a) disclosures would almost certainly be "overshadowed' by the prior restraint, and thus ineffective in violation of the FDCPA.

662 (internal quotations omitted). The facts pled, if true, must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    ARGUMENT

### A. The Public Policy of the FDCPA: Protecting the Least Sophisticated Consumer

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive collection practices." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

Congress designed the FDCPA to be enforced primarily through private parties – like Ms. Hunter – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5. *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008). The FDCPA is a strict liability statute, and a consumer need not "show intentional conduct" by the debt collector in order to recover damages. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010), *cert. denied*, 130 S. Ct. 3333 (2010). Whether a debt collector complies with the FDCPA is determined from the perspective of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

### B. Plaintiff has stated a claim against Palisades for violations of the FDCPA.

#### 1.    *Federal law does not require plaintiffs to precisely plead legal theories or to match facts to statutory subsections.*

Defendant asserts incorrectly that Ms. Hunter must match facts to the precise subsection allegedly violated. "The essence of a cause of action is found in the facts alleged and proven by the plaintiff, not the particular legal theories articulated." *Oneida Indian Nation v. County of*

*Oneida*, 617 F.3d 114, 139 (2d Cir. 2010). *Iqbal* and *Twombly* address the factual content

demanded by the federal rules: a plaintiff must allege sufficient concrete *facts* to provide fair

notice of her claim and show that the claim has substantive "facial plausibility." *Iqbal*, 556 U.S.

662 at 678, *Twombly*, 550 U.S. at 556. But as the U.S. Supreme Court has made clear

subsequently, the rules "do *not* countenance dismissal of a complaint for imperfect statement of

the *legal theory* supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346-

347 (2014) (emphasis added). Rather, the Federal Rules of Civil Procedure are designed to avoid

battles over technicalities. *Id.* Federal trial courts in other districts have applied this principle

specifically to the pleading of violations of the FDCPA, and held that matching of facts to

lettered subsections is not required. *See Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F.

Supp. 2d 1293, 1297 (S.D. Ala. 2011); *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031,

1040 (W.D. Wis. 2002).

　　In the same way, Ms. Hunter has tendered a highly detailed set of facts to support her

claims, alleging dates, attaching documentary proof, and describing the consequences of

Defendants' actions with great specificity. *See* Section II, *supra*; *see generally* FAC ¶¶ 1-145.

She then specifies the exact sections of the FDCPA that she alleges Defendants violated:

§§1692c, 1692e, 1692f, 1692g. DE 30, ¶ 151. Indeed, the Complaint is specific enough that in its

first, denied motion to dismiss, Palisades managed to identify a factual basis for each of the

violations Ms. Hunter had alleged, in order to argue against those claims. DE 25-3, pp. 19-24.

Moreover, it is the factual allegations that matter for the sufficiency of a pleading, not the legal

labels affixed to those allegations. Though Defendants may desire elaboration, it is not entitled to

"an exhaustive recitation" of her reasoning. *Mahan*, 777 F. Supp. 2d at 1297. Having met met the

"facial plausibility" standard set by *Iqbal* and *Twombly* and provided Defendants with fair notice

of her claims, Ms. Hunter was "required to do no more." *See Johnson*, 135 S. Ct. at 347.

In any event, the First Amended Complaint specifically links the factual and legal basis for Ms. Hunter's 1692g(a) claim, FAC ¶ 100-102, and for her claim of failing to perform a "meaningful attorney review," a term of art for violations of 1692e(3),(10). *See infra B. 2. iv.*

In the alternative, even if this court concludes that federal pleading rules do require Ms. Hunter to match facts to subsections, the fact that she did not is not fatal to the Complaint. In *Okyere v. Palisades Collection LLC (Okyere I)*, the court held that even though that Complaint merely set forth a "conclusory" "recitation of behavior prohibited by various sections of the FDCPA," this defect was remedied by the brief in opposition to the defendant's motion to dismiss, which made clear the specific acts that he asserts constituted violations of the FDCPA." *Okyere v. Palisades Collection LLC*, 961 F. Supp. 2d 508, 515 (S.D.N.Y. 2013). The court therefore "construe[d] the complaint as alleging that these acts constitute the basis for the FDCPA claim." *Id.* To the same end, Ms. Hunter enumerates in the next section the basis of each of her claims under the FDCPA, and requests that the court construe the First Amended Complaint as making these same allegations.

## 2. *Ms. Hunter has made out facially plausible FDCPA claims.*

Taking the facts in the Complaint are true, Ms. Hunter has made out facially plausible claims under sections 1692c, 1692e, 1692f, and 1692g of the FDCPA.

With regard to Plaintiff's claims under the FDCPA, Palisades' arguments for dismissal are only that Plaintiff "has failed to properly plead her theories of liability" and the "statute of limitations bars any alleged violation of the FDCPA contained in the Complaint through to November 11, 2015." DE 32, pp. 13. Palisades does not dispute that it would be liable, directly or vicariously, for violations of the FDCPA if the S&L Defendants were liable. As Palisades did not

argue in its moving papers that it would not be so liable, Plaintiff would object to Palisades raising this new argument in Reply, and would move to strike it. In the alternative, Plaintiff would seek leave of Court to file a Sur-Reply to any new issues raised by Palisades in its Reply.

### i. *Palisades violated 1692e by falsely misrepresenting to Ms. Hunter there was an enforceable judgment.*

15 U.S.C. §1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of a debt. It specifies, without limitation, examples of conduct that violate this prohibition, including falsely representing "the character… or legal status of any debt," 15 U.S.C. § 1692e(2), making "the threat to take any action that cannot legally be taken, 15 U.S.C. § 1692e(5), andusing "any false representation or deceptive means to collect…any debt," 15 U.S.C. § 1692e(10). Defendants served the Information Subpoena and Restraining Notice (the "Restraint") to JP Morgan Chase. When Defendants did so, they knew and intended that – as required by N.Y.CPLR 5222-a(3) – Chase would forward a copy of the Restraint to Ms. Hunter. FAC ¶¶ 67,77,97. As such, the Restraint is just as much a "communication" with the consumer as it was with Chase, given the FDCPA's broad definition of "communication." 1692a(2) ("The term "communication" means the conveying of information regarding a debt directly *or indirectly* to any person *through any medium*.") (emphasis added). Through this communication, Defendants falsely and misleadingly represented to Ms. Hunter that they held a valid judgment for the alleged debt against Ms. Hunter, when in fact they did not, violating § 1692e.

Threatening to restrain and execute on a bank account when there is no bank account also violates both 1692(e) and 1692e(5). Defendants' threats inherent in the Restraining Notice, issued before Ms. Hunter's bank account was actually frozen, are similar to other threats of unlawful action that courts have found violate these sections. *See, e.g.*, *Baptist v. Global Holding*

& *Inv. Co., L.L.C.*, 2007 WL 1989450 at * 5 (E.D.N.Y. 2007) (Allowing a debt collector to threaten to sue on a time-barred debt"would be to encourage manipulation and misuse of the legal hisystem."); *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011), and *Velazquez v. NCO Fin. Sys., Inc.*, No. 11–CV–00263, 2011 WL 2135633 at *5 (E.D.Pa. May 31, 2011); *See, e.g., Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014) (collecting on a satisfied debt misrepresents character and status of debt in violation of 1692e(2); *Taylor v. Heath W. Williams, L.L.C.*, 510 F. Supp. 2d 1206, 1211 (N.D. Ga. 2007) (same).

### ii.   *Palisades violated 1692f by restraining and then executing on her bank account without a judgment.*

Defendants' actual restraint of Ms. Hunter's bank account and subsequent refusal to return the money or even respond to Ms. Hunter, in the face of incontrovertible proof that they lacked authority to execute on her bank account, was unfair and forms the basis of a separate claim under § 1692f.

15 U.S.C. §1692f bars debt collectors from using "unfair or unconscionable means" in collecting or attempting to collect a debt. Courts interpret the terms "unfair" and "unconscionable" according to their plain meaning, *Gallego v. Northland Group, Inc.*, 814 F.3d 123, 127 (2d Cir. 2016) (quotations omitted), and from the perspective of the least sophisticated consumer. *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014). "Unfair" means "marked by injustice, partiality, or deception." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010). "Unconscionable" means "affronting the sense of justice, decency, or reasonableness" or "shockingly unjust or unfair." *Gallego*, 814 F.3d at 128.

Here, Defendants engaged in unconscionable and unfair conduct when they issued the unlawful restraint, ordered Chase to freeze Ms. Hunter's bank account, and caused the Marshal

to withdraw funds from it, all pursuant to a vacated judgment. FAC ¶¶ 66-69, 95-112, 124-26. Defendants then failed to lift the restraint or even respond when Ms. Hunter wrote to them a) enclosing a copy of the vacatur, a) demanding her bank account be released, and c) requesting verification of the debt. *Id.* ¶¶ 114-17. By retaining this money, ignoring her request for relief Defendants engaged in conduct analogous to the types of "unauthorized taking of money or property" courts have found in the past to violate 1692f. *See Sutton v. Fin. Recovery Servs.*, 121 F. Supp. 3d 309 (E.D.N.Y. 2015); *See also Okyere I*, 961 F. Supp. 2d at 531 (finding plaintiff had stated a claim under §1692f by alleging that defendant had unlawfully removed money from a bank account then refused to return it in violation of a court order); *Polanco v. NCO Portfolio Mgmt.*, 930 F. Supp. 2d 547 (S.D.N.Y. 2013) (*Polanco I*) (finding that the plaintiff had stated a claim under 1692f where defendant debt collector had unlawfully removed money from plaintiff's bank account pursuant to a sewer service judgment and refused to return it even after a court order, constituting "acts that affront[ed] the sense of 'justice, decency or reasonableness'"); *Currier*, 762 F.3d at 534 (Debt collector's filing and failing to release an invalid judgment lien against a debtor's home violated 1692f.); *Fox v. Citicorp. Credit Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994) (§ 1692f violation where debt collector sought a writ of garnishment against a person who was current in her payments); *Lovelace v. Stephens & Michaels Associates, Inc.*, No. 07-10956, 2007 U.S. Dist. LEXIS 83281 at *4-5 (E.D. Mich. Nov. 9, 2007).

### iii. *Defendants violated 1692 by S&L's failure to perform a meaningful attorney review prior issuing the information subpoena and bank restraint.*

Plaintiff alleges that Defendants violated the FDCPA (and GBL 349) by the S&L Defendants signing Restraints without having any attorney review – much less a meaningful attorney review – and that it is the S&L Defendants' pattern and practice to do this. ¶ 77-93, 156-166. Any such review would entail, at the very least, spending 30 seconds to check the eCourts

website to see if this very old judgment, obtained by a different firm, had been vacated. ¶ 79. Defendants could not even do that.

The least sophisticated consumer (under the FDCPA) or even the "reasonable consumer" (under GBL 349) receiving the Restraint would think that issuing law firm must have had an attorney to make a professional judgment to conclude it had the right to freeze her bank account and seize her funds.

The Second Circuit long held that sending a collection letter on attorney letterhead or under attorney signature is "false and misleading" if the attorney has not conducted a meaningful review of the file and determined based on the facts of the individual case that a letter should be sent. *Clomon*, 988 F.2d at 1320. Such practices violate § 1692e, e(3), and e(10). *Id.* "[S]ome degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA." *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 301 (2d Cir. 2003). This is because the use of the attorney's signature represents to the least sophisticated consumer "that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent." *Id.* (*quoting Clomon*, 988 F.2d at 1321); *see also Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996) (attorney letter implies that attorney "has reached a considered, professional judgment").

A meaningful attorney review is also required for debt collector communications made through court papers. *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976, at *5 (E.D.N.Y. May 24, 2012) (claims that attorneys filed lawsuits without meaningful review survived motion to dismiss); *Miller v. Upton*, 687 F. Supp. 2d 86, 96 (E.D.N.Y. 2009) (applying same standard to collection letters and legal pleadings); *see also Mohr v. Sec. Credit Servs., LLC*, 141 F. Supp. 3d. 179, 186 (N.D.N.Y. 2015). Requiring

professional judgment and meaningful attorney review also applies to post-judgment collection activities such as issuing information subpoenas. *See Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 640–41 (S.D.N.Y. 2013). "While there is no bright-line test to determine whether a sufficiently meaningful attorney review has occurred in a given case… the analysis would turn on, among other things, whether the attorney's examination of the case file was adequate to permit determination of "whether [the debtor] w*as or was not obligated to pay the deb*t…" (emphasis added)." *Id*. at 640, 641 *quoting Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 301 (2d Cir.2003). In *Musah* the debt collection law firm was seeking to collect a judgment that was assigned from the original judgment creditor to its client. State law requires a notice of assignment of the judgment to be received by the judgment debtor as a precondition to collection. Therefore, § 1692e(3) required "that an attorney seeking to collect that judgment engage in a review the case file sufficient to determine that the judgment debtor received notice of the assignment." *Id*. at 641.

Applying *Musah* – and the Second Circuit *Miller* decision upon which it relied --  to the case at bar, the S&L Defendants were required to determine whether or not it had the right to restrain and execute on Ms. Hunter's bank account. Moreover, while there was no dispute of the validity of the judgment in *Musah*, the court thought it so obvious that before executing on a putative judgment "ordinarily an attorney's determination that there exists a valid judgment" would fulfill the attorney's 1692e(3) obligation for a meaningful attorney review. But the FAC alleges the S&L Defendants made no "attorney's determination that there exists a valid judgment" before restraining and executing on her account. Applying *Musah*, Ms. Hunter clearly states a claim the S&L Defendants violated 1692e(3), as well as 1692e and 1692(10).

### iv. *Defendants violated the FDCPA by S&L's failure to provide a 1692g notice*

The S&L Defendants violated 1692g by failing to provide her a notice of her right to dispute the putative judgment within 30 days – and to thereby force S&L to cease any collection activities if it does not verify the validity of the debt – as well as other important statutory disclosures. 15 U.S.C. § 1692g. The S&L Defendants were required to send the 1692g notice to Ms. Hunter prior to, or within 5 days of, serving on Ms. Hunter its initial communication, the Restraint.[2] The S&L Defendants provided no 1692g notice at any time, and thus violated the FDCPA.

In addition, each subsequent debt collector must provide a separate 1692g notice. This requirement enables consumers to dispute invalid debts and to prevent improper enforcement actions in advance. Although Palisades had originally sued Ms. Hunter in 2007, the first communication regarding the putative underlying debt from S&L was the Restraint. Thereafter, S&L – working on behalf of Palisades – failed to send the required verification rights notice. This omission prevented Ms. Hunter from asserting her right to verification before her account was frozen.

According to the Ninth Circuit, the only circuit to have ruled on this issue, the FDCPA "unambiguously requires any debt collector—first or subsequent—to send a § 1692g(a) validation notice within five days of its first communication with a consumer in connection with the collection of any debt." *Hernandez v. Williams, Zinman & Parham PC*, 2016 WL 3913445 (9th Cir. July 20, 2016).

The Honorable Judge H. William Pauley III came to the same conclusion in *Tocco v. Real Time Resolutions, Inc.*, holding that "a debt collector must send a validation notice under

---

[2] As discussed in § B.2.ii above, the Restraint was an indirect "communication" by the S&L Defendants to Ms. Hunter via the bank. *See* 1692a(2) (defining "communication.")

section 1692g(a) even if a prior debt collector already sent a notice regarding the same debt" In

order to inform consumers that they have the right to request verification of a debt even from

subsequent collectors. 48 F. Supp. 3d 535, 539 (S.D.N.Y. 2014). In particular, the judge

expressed concern that a "subsequent collector may seek collection of a debt that has already

been extinguished," making the (g) notice from that subsequent collector all the more important

to clearly identify the putative debt. *Id.*

Judge Pauley's prescient fear is borne out in the instant action: if Defendants had sent the

required (g) notice after the restraining notice was issued but before Ms. Hunter's account was

actually frozen, Ms. Hunter could have disputed the debt and provided Defendants with a copy

of the vacatur, potentially preventing her from suffering any damages at all.

However, simply providing the 1692g notice is insufficient. While collection activities

may continue during the 30 day validation period, those activities "may not overshadow or be

inconsistent with the disclosure of the consumer's right to dispute the debt…" 1692g(b).  For

example, the validation is overshadowed "where a debt collector serves a consumer with process

initiating a lawsuit during the validation period." *Ellis*, 591 F.3d at 136 (2d Cir. 2010).  In the

case at bar, even if the S&L Defendants had timely provided Ms. Hunter a list of the information

required to be disclosed under 1692g, the Restraint would overshadow the 30 day validation

language, making the validation notice ineffective. The only way that the S&L Defendants could,

consistent with 1692g, issue the Restraint if they sent the 1692g notice letter, and then waited 30

days before issuing the Restraint. Has the S&L Defendants done so, Ms. Hunter could have sent

the order vacating the default period during the validation period, preventing the restraint and

execution of her bank account from ever happening.[3] Defendants should not be able to evade the

---

[3] Hypothetically, the S&L Defendants might be able to avoid FDCPA liability, at least under 1692g, by including
"transitional" language in the 1692g notice stating that they may attempt to issue a Restraint during the 30 day

prohibition on "overshadowing" by simply not sending the validation notice.

### *v.* *1692c violation*

15 U.S.C. §1692c governs the acceptable types and means of communication debt collectors may use in connection with the collection of a debt. Among other prohibitions, a debt collector may not communicate about an alleged debt with a person other than the consumer, with a few exceptions, besides, inter alia,,…as reasonably necessary to effectuate a postjudgment judicial remedy. 15 U.S.C. §1692c. Here, Ms. Hunter has alleged that when Defendants restrained Ms. Hunter's bank account by issuing the Restraint to JP Morgan Chase Bank and directing the Marshal to seize Ms. Hunter's funds, they unlawfully communicated with third parties in violation of §1692c. FAC ¶¶ 66. This communication was not reasonably necessary to effectuate a post-judgment judicial remedy, as by November 11, 2015, Defendants possessed no judgment against Ms. Hunter. *Id.* ¶ 56.

### *vi.* *Statute of limitations*

Finally, since all the FDCPA violations alleged occurred on or after November 11, 2015, and since Ms. Hunter filed her original Complaint on November 11, 2016, her claims are timely under the FDCPA's one-year statute of limitations.

### C.  Plaintiff states a claim that Palisades violated GBL 349 both through its own actions and through its debt collection law firm, the S&L Defendants.

N.Y. G.B.L. § 349 is a broadly protective consumer protection measure, which bars "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and provides a cause of action for violations. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 28 (2000). A plaintiff under G.B.L. § 349 must prove three elements: that the

---

validation period, but doing so does not affect the consumer's verification rights. *See Ellis* at 136 (the debt collector's 1692g notice letter may not have been overshadowed by the collection lawsuit served during the validation period had the 1692g notice letter stated that it may file suit during the 30 day validation period, but this would not affect the consumer' s right to, inter alia, dispute the validity of the debt.)

challenged act or practice was "consumer-oriented," that it was materially misleading, and that it caused actual damages to the plaintiff. *Id.*

In the First Amended Complaint, Ms. Hunter alleges Palisades violated G.B.L. § 349 by committing multiple instances of deceptive acts and practices that injured Ms. Hunter and had a broad impact on consumers at large: Palisades obtained a judgment against Ms. Hunter via sewer service, by making false representations in sworn affidavits submitted to the court. FAC ¶¶ 15-45. Additionally, through its debt collection law firm, Palisades restrained Ms. Hunter's bank account, representing that it had a valid judgment against her and that a meaningful attorney review had been conducted on the underlying account. FAC ¶¶ 66-97.

### 1. *What Palisades does not challenge*

With regard to Plaintiff's claims under G.B.L. § 349, Palisades asserts only that Plaintiff has not stated facts satisfying some of the required elements: that misconduct be "consumer-oriented," "materially misleading," and injurious to the plaintiff. DE 32, pp. 16-19. Importantly, Palisades does not dispute that it would be liable for violations of G.B.L. § 349 if the S&L Defendants were liable.

As Palisades did not argue in its moving papers that it would not be liable for violations of the G.B.L. § 349 even if the S&L Defendants are liable, Plaintiff would object to Palisades raising this new argument in Reply, and would move to strike it. In the alternative, Plaintiff would seek leave of Court to file a Sur-Reply to any new issues raised by Palisades in its Reply.

### 2. *Plaintiff has made out a claim that Defendants' restraint of her bank account, communications regarding this restraint, and failure to lift the restraint violated GBL § 349.*

Palisades' arguments that Plaintiff failed to state a claim for the above violations have no merit. First, Palisades argues that G.B.L. § 349 requires Ms. Hunter to plead that the "debt at issue" was a "consumer debt," and that the absence of such pleading is fatal to the claim. DE 32,

pp. 13. This is not true. §349 requires only that that misconduct be "consumer-oriented"and it applies to broad range of economic activity. N.Y. G.B.L. § 349. Moreover, Palisades itself deemed the putative debt a "consumer" debt by filing the underlying collections lawsuit as a consumer credit transaction. *See* FAC, Ex. A.

Second, Palisades argues the restraint and garnishment of Ms. Hunter's bank account by Defendants "could not possibly" have been materially misleading to Ms. Hunter, because she knew she had already vacated the judgment in 2014. DE 32, pp. 13,14.

This argument is inapposite and misapprehends Ms. Hunter's claim. What Ms. Hunter alleges is that Defendant unlawfully issued a restraining notice on her bank account against her as part of a pattern and practice of blindly issuing such restraints without taking any steps, much less performing meaningful attorney reviews, to confirm whether the underlying judgments are valid. This practice was consumer-oriented, materially misleading and caused Ms. Hunter harm.

In order to demonstrate misconduct is consumer-oriented, a consumer must show that "acts or practices have a broader impact on consumers at large," but need not establish a pattern of repetition. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (Ct. App. 1995). Rather, the conduct must have the *potential* to affect similarly situated consumers. *Id.*

Palisades assigns judgments *en masse* to S&L for collection with no prior review by Palisades and no meaningful attorney review by S&L. FAC ¶ 163. S&L is a firm with only three attorneys, including Defendant Harvey Sharinn, yet it files thousands of collection lawsuits and collects on tens of thousands of putative judgments each year. *Id.* That S&L failed to conduct even a thirty second internet search to verify the judgment in Ms. Hunter's case – which was 8 years old and which had been obtained by a defunct law firm notorious for committing debt

collection violations – and does such enormous volume suggests it likely also did not conduct a review on its other cases.

Such practices have been held to be consumer-oriented: in *Midland Funding, LLC v. Giraldo*, the state court consumer defendant had sufficiently pled a consumer-oriented conduct in his § 349 counterclaim by alleging the debt collector had engaged in "the routine filing of assigned debt lawsuits…despite a lack of crucial, legally admissible information" or "sufficient inquiry" into whether the claims are meritorious." 961 N.Y.S.2d 743, 752 (Nassau Cty Dist. Ct. 2013) (internal quotations omitted).

Second, Defendants' conduct was materially "deceptive" and "misleading." Courts evaluate whether misconduct is "misleading" based on whether it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26. Here, Defendants represented to Ms. Hunter that it held a valid judgment against her; that it had a right to execute on her bank account; and that an attorney had performed a meaningful attorney review of the case. None of these representations were true, but they were likely to mislead a layperson like Ms. Hunter, who had vacated the judgment *pro se* and might not have been certain that she had actually or properly vacated the judgment. This impression would be reinforced when the bank actually complied with the restraint by freezing the account and withdrawing funds, and when defendants ignored her request to lift the restraint.

Defendants' failure to perform a meaningful attorney review is deceptive and misleading the reasonable consumer under GBL 349 for the same reasons it is false, deceptive, and misleading to the least sophisticated consumer under the FDCPA. *See supra* B. 2. iv. Deceptive representations in collection lawsuits, including representation of a meaningful review of attorney issued papers, have held to state a GBL 349 claim as they were materially "deceptive"

or "misleading,: as well as consumer oriented. *Diaz v. Portfolio Recovery Assocs., LLC,* 2012 WL 661456, at *14 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted*, 2012 WL 1882976 (E.D.N.Y. May 24, 2012); and *Sykes v. Mel Harris and Assoc, LLC*, 757 F.Supp.2d 413 (S.D.N.Y 2010).

As in these cases, Defendants' issuance of an invalid restraint on Ms. Hunter's bank account – signed by Harvey Sharinn with no meaningful attorney review – was misleading because it was likely to deceive to the "least sophisticated consumer" into believing there had been meaningful attorney review and that Defendants had authority to execute on her bank account.

Finally, Defendants' conduct caused obvious harm to Ms. Hunter. The unavailability of her money forced her to her to pay her bills late and through unconventional means, and she experienced emotional pain, anguish, and embarrassment.

### 3. Ms. Hunter's other GBL § 349 claims, which Palisades does not address, are valid.

Palisades also violated §349 by perpetrating sewer service. Ms. Hunter alleges that Palisades obtained a judgment against her in 2007 by submitting false affidavits to the court. DE 30, ¶¶ 23-32. Among these was the false affidavit of service by a process server, Loai Sarsour, who swore to substitute service of the summons and complaint upon a relative at Ms. Hunter's residence. Yet service was never made, the person named in the affidavit did not exist, and no one would have been home at the time of service. *Id.*

Ms. Hunter's claim of sewer service is timely pursuant to the doctrine of equitable tolling. The ordinary statute of limitations for violations of G.B.L. §349 is three years. N.Y. C.P.L.R. §214(2); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (Ct. App. 2001). But under New York law, the doctrine of equitable tolling grants relief to a plaintiff from a

statute of limitations defense when she was "induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation marks omitted); *see also Stuart v. Stuart,* No. 12–CV–5588, 2013 WL 6477492, at *4 (S.D.N.Y. Dec. 10, 2013) (same). It applies where "the defendant wrongfully concealed material facts," preventing "plaintiff's discovery of the nature of the claim." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014), citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 157 (2d Cir. 2012). The statute of limitations begins to run when the plaintiff acquires or should have acquired actual knowledge of the facts underlying her cause of action, or. *Marshall,* 51 F. Supp. at 462.

Here, Palisades fraudulently deprived Ms. Hunter of notice of her claim by engaging in the very sewer notice that forms the basis of her claim. Palisades' failure to serve Ms. Hunter with the papers in the collection lawsuit prevented her from finding out there was even a case against her until she saw a copy of her credit report in early 2014. In *Sykes v. Mel Harris*, the Honorable Judge Denny Chin held that similar sewer service, if true, would toll the one-year statute of limitations for violations of the FDCPA. *Sykes,* 757 F. Supp. 2d at 422. His analysis is also instructive in the context of § 349. "Because sewer service purposefully ensures that a party is never served," Judge Chin wrote, "it is plausible that defendants' acts were "of such character as to conceal [themselves]" to warrant equitable tolling." *Id.*, citing *Bailey v. Glover*, 88 U.S. 342, 349-50 (1874). In the same way, equitable tolling should cause the three-year G.B.L. § 349 statute of limitations to run from when Ms. Hunter discovered Defendants' violations. Since she filed suit in November 2016, her claims are timely.

Because Ms. Hunter has stated a claim against Defendants for violations of the FDCPA, the court should continue to exercise supplemental jurisdiction over Plaintiff's state G.B.L. § 349

claim against Defendants, pursuant to 28 U.S.C. §1367.

### D.  Palisades and the S&L Defendants converted the money in Ms. Hunter's bank account; the Court should additionally not dismiss Plaintiff's request for punitive damages

#### 1.      Plaintiff pleads facts stating a "facially plausible" claim for conversion.

A conversion occurs when someone "intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.,* 827 NYS 2d 96, 100 (Ct. App. 2006). A plaintiff claiming conversion must establish a) her legal ownership of a specific, identifiable piece of property, and b) the defendant's interference with her property interest in defiance of her rights. *Id.* If the property allegedly converted is money, "it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner…The funds of a specific, named bank account are sufficiently identifiable." *Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472, 475 (1st Dep't 1995).

To constitute conversion, a defendant's exercise of control must have been intentional, he need not have known that the control was without authority. For example, in *Bhattal v. Grand Hyatt-New York*, a computer error at a hotel caused the bell-hop to believe that he was collecting the bags of a departing guest when in fact he collected the bags of a newly arriving guest and forward them to the airport, where they were lost. 563 F. Supp. 277 (S.D.N.Y. 1983). The court held the hotel's acts constituted conversion. *Id.* The employee's acts were intentional, and it was irrelevant that the hotel misunderstood who the bags actually belonged to. *See id.*

Ms. Hunter has alleged facts satisfying each element required to state a conversion claim. Palisades, through the S&L Defendants, froze Ms. Hunter's bank account without any authority to do so, directed a New York City Marshal to seize Ms. Hunter's money, directed the Marshal

to place Ms. Hunter's money in trust for the benefit and use of Defendants and then to forward said funds to Defendants. Defendant had no right to engage in these actions, because they held no valid judgment against Ms. Hunter. Eventually, Ms. Hunter sent a letter to Defendants giving notice of her legal ownership of the money, and demanding its return and release. Defendants ignored this notice and refused to return her funds.

This money was readily identifiable: it was located in a specific bank, labeled with a specific account number, with a specific amount of money in it, and withdrawn on a specific date, by a specific third-party. *See Newbro v. Freed*, 409 F.Supp.2d 386, 395 (S.D.N.Y. 2006); *See also Eastman Kodak Co. v. Camarata*, 2006 WL 3538944, at *14 (W.D.N.Y. 2006).

Because the judgment against Ms. Hunter had been vacated, she had the sole property interest in the funds in her bank account. Defendants knowingly exercised dominion over these limited funds, unlawfully interfering with her right to possession and ability to use her money for her family's expenses. The fact that Defendants may have incorrectly believed at that time of the restraint that they were legally entitled to execute on her bank account has no bearing on whether the taking of the funds was unlawful, so long as Defendants intended to exercise control over those funds. *See Bhattal*, 563 F. Supp. at 279.

### 2. *Palisades is vicariously liable for this conversion.*

Palisades argues that that because it was the S&L defendants who restrained Ms. Hunter's bank account and garnished funds, Palisades never "exerted dominion or control" over her bank account. Providing no authority, Palisades asserts simply "it is not vicariously liable for actions of its counsel in alleged violation of the law on conversion." DE 32, pp. 15. As suggested by the absence of any citations to substantiate this argument, Palisades is wrong: under the basic principles of agency law, Palisades is vicariously liable for the actions of the S&L Defendants.

The traditional rules of vicarious liability make principals liable to third parties for acts committed by their agents within the scope of the agency. *Fils-Aime v. Ryder TRS, Inc.*, 837 N.Y.S.2d 199, 200 (App. Div. 2d Dep't 2007). *See also Meyer v. Holley,* 537 U.S. 280, 285 (2003); *accord Security Pacific Mortg. & Real Estate Servs., Inc. v. Herald Ctr., Ltd.,* 891 F.2d 447, 448 (2d Cir. 1989) (per curiam). Vicarious liability applies to torts in general, including conversion.[4]

A principal-agent relationship exists when the principal, consents to allow the agent to act on his behalf and subject to his control; and where the agent consents to so act. *Meyer*, 537 U.S. at 286; Restatement (Third) of Agency, § 1.01; *Fils-Aime*, 837 N.Y.S.2d at 200. The principal need only have the *right* to control the agent's conduct; it need not actually control every detail of the agent's conduct. *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991); *Mazart v. State*, 441 N.Y.S.2d 600, 605 (Ct. Claims 1981); 2A N.Y. Jur. 2d Agency § 1. An agency relationship may exist even where the principal's right of control is limited to making management and policy decisions affecting the agent. *See Basic Books, Inc.,* 758 F. Supp. at 1546; *Mazart*, 441 N.Y.S.2d at 605.

Following these rules, the attorney-client relationship is one that may give rise to a principal-agent relationship, and therefore to vicarious liability. A client has the power to control its attorney in "material respects" if it wishes to do so. *Okyere I*, 961 F. Supp. 2d at 517, citing, *inter alia*, *Martsolf v. JBC Legal Grp., P.C.,* 2008 WL 275719, at *10–11 (M.D.Pa Jan. 30, 2008) (the mere existence of an attorney-client relationship, where debt collector had retained law firm and transmitted information to firm for the purposes of debt collection, showed exercise of control sufficient to impose vicarious liability); *Oei v. N. Star Capital Acquisitions, LLC,* 486

---

[4] *See Clients' Sec. Fund of State v. Grandeau*, 72 N.Y.2d 62, 67 (Ct. App. 1988) (law partners, who are agents of one another, are liable for conversion committed by any other partner, even if they had no knowledge of it.)

F.Supp.2d 1089, 1094-95 (C.D.Cal. 2006) (imputing principal-agent relationship and vicarious liability even without an explicit showing of control).

The U.S. Supreme Court itself "has made clear that 'clients must be held accountable for the acts and omissions of their attorneys.'" *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 584 (S.D.N.Y. 2015) (*Polanco II*), quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 396–97 (1993) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 633–34 (1962)). In *Polanco II*, the plaintiff alleged that debt collector through its debt collection law firm had refused to return restrained funds after the underlying judgment was vacated. 132 F. Supp. 3d at 570-75. The court observed that because the defendant had voluntarily chosen its attorney as its representative in the action, it could not "now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* at 584. "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts'….' " *Id.*, *quoting Link,* 370 U.S. at 633–34 (internal citation omitted).

Here, in the same way, Palisades voluntarily retained S&L, a debt collection law firm, for the express purpose of collecting on Ms. Hunter's alleged account and the alleged judgment. FAC ¶ 63-66. So, when S&L restrained and garnished Ms. Hunter's bank account pursuant to an unlawful judgment, then failed to return it upon demand, S&L did so well within the scope of its authority. *See Okyere I,* 961 F. Supp. 2d at 517 ("the facts alleged in the complaint easily lead to the conclusion that [the debt collection law firm was] acting within their authority from Palisades" when they continued executing on a judgment after it was vacated).

In addition, as a corporation, Palisades can legally only act in court proceedings through an attorney. *See* N.Y. C.P.L.R 321(a). Acts taken during the debt collection lawsuit are

necessarily the acts of the corporate party. And Palisades, as the client, necessarily had the right to control its retained counsel. NY Professional Disciplinary Rule 1.2(a).

Additional facts also support the presence of a principal-agent relationship between Palisades and the S&L defendants. First, because S&L was contracted specifically to collect on Ms. Hunter's alleged account and the judgment – which had been vacated – S&L's wrongful actions were actually necessary to further the purpose entrusted to them by Palisades.[5]

In sum, S&L was acting on behalf of Palisades and within the scope of its agency as the debt collection law firm for Palisades when it intentionally restrained and garnished Ms. Hunter's bank account, then failed to return the money upon demand. As a result, Palisades is vicariously liable for the conversion committed by S&L.

### 3. Defendants motion to dismiss Plaintiff's request for punitive damages is premature.

Defendants' request to move for dismissal of "Ms. Hunter's claim for punitive damages" for conversion is improper and should be denied. *See Denis v. Home Depot, U.S.A., Inc.*, 2014 WL 6632486, at *6 (E.D.N.Y. Nov. 21, 2014). A motion to dismiss is "addressed to a 'claim'— not to a form of damages." *Okyere II*, 961 F. Supp. 2d at 536, quoting *Amusement Indus., Inc. v. Stern,* 693 F.Supp.2d 301, 318 (S.D.N.Y. 2010). Because there is "no independent cause of action for punitive damages under New York law," Defendants' motion to dismiss Ms. Hunter's request for punitive damages on her conversion claim should be denied as "procedurally premature." *Okyere II*, 961 F.Supp. at 536. *See also Williams v. Coca Cola Co.*, 2017 WL 1214503, at *5 (N.D.N.Y. Mar. 31, 2017); *Willman v. Zelman & Associates, LLC,* 2012 WL 811512, at *5 (S.D.N.Y. 2012); *Denton v. McKee,* 332 F.Supp.2d 659, 667 (S.D.N.Y. 2004).

---

[5] *Cf. Swegan v. Svenson*, 960 N.Y.S.2d 768, 769 (App. Div. 4th Dep't. 2013) (holding defendants liable for physical trespass and resulting conversion if they "directed the trespass or such trespass was necessary to complete the contract" between defendants and the purported agent.)

Even if this court concludes Defendant's motion is not premature, Ms. Hunter has still alleged facts that a jury might reasonably conclude show a high degree of moral culpability, justifying punitive damages for Defendants' conversion. In New York, punitive damages may be awarded where conversion "was accomplished by malice or reckless or willful disregard of plaintiff's rights." *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 178 (E.D.N.Y. 2010). An act is malicious when "done deliberately with knowledge of the plaintiff's rights and with the intent to interfere..." *Caballero v. Anselmo*, 759 F. Supp. 144, 153 (S.D.N.Y. 1991).

Defendants knew they had no right to interfere with Ms. Hunter's her property interest in the money in her bank account, but did so anyway. The fact that the judgment had been vacated and the case dismissed is readily available online, revealed by a mere two minute search of the free, publicly available New York courts website. FAC ¶¶ 71-73. The judgment had originally been obtained in 2007, a full eight years before Defendants executed on Ms. Hunter's bank account. *Id.* ¶ 45. It had been so obtained by another law firm, which had been shut down after being sued by the Minnesota Attorney General for perpetrating a massive scheme of fraudulent debt collection. FAC ¶¶ 59-60. That these steps can be taken in a matter of minutes and that S&L's own managing attorney has noted their importance, FAC ¶ 81-85, together show a high degree of moral culpability. Defendants' culpability is reinforced by the fact that when Ms. Hunter demanded her money back, providing clear proof that the judgment had been vacated and that Defendants had no right to execute on it, Defendants simply ignored her.

Defendants' conduct was willful and knowing, or at minimum showed a reckless disregard for Ms. Hunter's rights. Ms. Hunter has alleged facts plausibly suggesting she would be entitled to punitive damages.

### E. Plaintiff's Exhibits "C" and "S" are material and relevant to the First Amended Complaint and should not be stricken.

The court may strike matter that is "redundant, immaterial, impertinent, or scandalous." Fed. R Civ. P. 12(f). But courts avoid tampering with pleadings in the absence of a "strong reason." *Lipsky v. Commonwealth v. United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976). None of Plaintiff's exhibits fit the categories set forth in rule 12(f). To the contrary, they are unique and relevant contributions to the record that support the allegations set forth in the First Amended Complaint. Exhibit C (the First Amended Complaint in a lawsuit against Palisades' parent company, Asta Funding for violations of fair debt collection and consumer protection laws), and Exhibit S (Asta Funding's form 10-K, *see* FAC fn. 1) show that Palisades is part of a corporate apparatus with a history of perpetrating sewer service against numerous consumers, in conjunction with the very process server who falsely swore to serving Ms. Hunter with the papers in the collections lawsuit. This history shows that the Defendants' conduct was "consumer-oriented within the meaning of G.B.L. § 349, supporting her claim."

## IV. CONCLUSION

For these reasons, Plaintiff prays the court deny Defendant Palisades' motion to dismiss and strike exhibits in its entirety and to allow this case to proceed to the discovery phase.

Respectfully submitted,
*/s/*
Divya Subrahmanyam
One of Plaintiff's Attorneys


Attorneys for Plaintiff:

Ahmad Keshavarz
THE LAW OFFICES OF AHMAD KESHAVARZ
16 Court St., 26th Fl.
Brooklyn, NY 11241-1026
Phone: (718) 522-7900

Fax: (877) 496-7809 (toll-free)
Email: ahmad@NewYorkConsumerAttorney.com

Matthew Schedler, Esq.
885 Flatbush Ave., 2nd Floor
Brooklyn, NY 11226
Phone (718) 940-6311
Fax: (718) 462-5537
MatthewSc@camba.org

Divya Subrahmanyam, Esq.
885 Flatbush Ave., 2nd Floor
Brooklyn, NY 11226
Phone (718) 940-6311
Fax: (718) 462-5537
DivyaS@camba.org

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court

using the CM/ECF system which will send notification of such filing to the following:

> Palisades Acquisition XVI, LLC
> By and through their attorneys of record
> Mr. Jonathan Greystone
> Spector Gadon & Rosen, P.C. (PA)
> 1635 Market Street, 7th Floor
> Philadelphia, PA 19103
> (215) 241 8927
> (215)-241-8844 (fax)
> jgreystone@lawsgr.com
>
> SHARINN & LIPSHIE, P.C.
> HARVEY SHARINN
> By and through their attorneys of record
> Amanda Moreno, Esq.
> Sharinn & Lipshie, P.C (Uniondale)
> 333 Earle Ovington Blvd., Suite 302
> Uniondale, NY 11553
> (516)-565-2877
> (516)-408-5160 (fax)
> amandaesq@optonline.net

Dated:  Brooklyn, NY

> <u>May 8, 2017</u>

>  /s/

> Divya Subrahmanyam
> One of Plaintiff's Attorneys