UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA HUNTER,

                    Plaintiff,

        - against -

PALISADES ACQUISTION XVI, LLC,
SHARINN & LIPSHIE, P.C., and HARVEY
SHARINN,

                    Defendants.

**OPINION AND ORDER**

16 Civ. 8779 (ER)

Ramos, D.J.:

Patricia Hunter ("Plaintiff") brings this action against Defendants Palisades Acquisition

XVI, LLC ("Palisades"), Sharinn & Lipshie, P.C. ("S&L"), and Harvey Sharinn ("Sharinn")

alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et*

*seq.*, and New York General Business Law § 349 ("Section 349").  Before the Court is

Defendant Palisades' motion to dismiss the First Amended Complaint ("FAC") in its entirety

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and, in the alternative, to strike

Exhibits C and S from the FAC pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

For the following reasons, Palisades' motion is DENIED.

I.      **BACKGROUND[1]**

Palisades is a Delaware limited liability company that purchases charged-off consumer

debt in bulk or purchases the right to collect consumer debts already in default and attempts to

collect on the debt.  FAC (Doc. 30) ¶¶ 10, 150(c).  In April 2007, Palisades sued Plaintiff, a

---

[1] The following facts are based on the allegations in the FAC, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

home health aide, in Bronx County Civil Court, claiming that Palisades had purchased a debt of $2,572.21 from Direct Merchants Bank resulting from Plaintiff's credit card debt. FAC ¶¶ 14–18; Ex. A. Palisades was represented in that action (the "Collections Lawsuit") by Wolpoff & Abramson, L.L.P. and filed an affidavit of service sworn to by Loai F. Sarsour ("Sarsour"). *Id.* ¶¶ 21, 25.[2]

However, Plaintiff never had an account with Direct Merchants Bank and believes she has fully paid off every credit card she has ever owned. *Id.* ¶ 19. Plaintiff claims she was unable to raise these points in the Collections Lawsuit because she was never served with the summons and complaint. *Id.* ¶ 22. The affidavit of service filed by Sarsour in the Collections Lawsuit claimed that service was effectuated on April 18, 2007 (a Wednesday) at 2:36 p.m. by leaving the documents with a relative of Plaintiff named James Hunter, who was described as "a 55-year old black man with black hair who was approximately 6' tall and weighed around 210 pounds." *Id.* ¶¶ 25, 28; Ex. B. Plaintiff does not know and is not related to anyone by the name of James Hunter. *Id.* ¶ 29. Plaintiff's husband, who lived with her, was named Samuel Hunter. *Id.* In 2007, he "worked every weekday" and did not arrive home until 9:00 p.m. *Id.* ¶ 30. Mr. Hunter did not match the physical description listed in Sarsour's affidavit. *Id.* Plaintiff did not live with any other adult men. *Id.* ¶ 29. Sarsour also attested that he mailed a copy of the summons and complaint to the same address. *Id.* ¶ 27.[3] Neither Plaintiff nor her husband, however, received any papers relating to the Collections Lawsuit in the mail. *Id.* ¶ 31.

---

[2] In 2010, Wolpoff & Abramson, L.L.P. was shut down as a result of a lawsuit filed against the firm by the Minnesota attorney general. *Id.* ¶ 60. However, Plaintiff alleges that Wolpoff & Abramson never withdrew from the Collections Lawsuit, and no other attorney ever appeared in the case. *Id.* ¶ 62. In fact, Wolpoff & Abramson is still listed as the attorney of record for Palisades. *Id.* Ex. G.

[3] According to the FAC, Sarsour attested that he served and subsequently mailed the summons and complaint to 2375 Bruner Ave, 1ˢᵗ Fl., Bronx, NY 10466. *Id.* ¶¶ 25, 27. However, the Court notes that Sarsour's affidavit states that he visited 4375 Bruner Ave. and mailed a copy of the summons and complaint to the same address. *Id.* Ex. B.

In June 2007, Palisades moved for a default judgment against Plaintiff. *Id.* ¶ 39. In doing so, one of Palisades' employees swore to having "personal knowledge of the facts of the case," including that Plaintiff had opened an account with Direct Merchants Bank, incurred charges, and defaulted on her debt. *Id.* ¶ 40. On June 19, 2007, Palisades obtained a default judgment against Plaintiff for $2,834.13. *Id.* ¶ 45. Plaintiff never received a copy of the judgment or any notice that judgment had been entered against her. *Id.* ¶ 47.

In early 2014, nearly seven years later, Plaintiff first learned of the Collections Lawsuit when she and her husband attempted to modify the mortgage loan for their house. *Id.* ¶¶ 48–59. At that point, they were informed that a judgment had been entered against Plaintiff in the Collections Lawsuit. *Id.* She filed a *pro se* Order to Show Cause in the Collections Lawsuit, seeking to vacate the default judgment because she was never served. *Id.* ¶ 50; Ex. E. A hearing on Plaintiff's Order to Show Cause was held on March 12, 2014. *Id.* ¶ 55. Palisades did not appear at the hearing; the presiding judge vacated the judgment and set a trial for April 21, 2014. *Id.* ¶ 56. Palisades also did not appear at the trial; at that point, the presiding judge dismissed the Collections Lawsuit. *Id.* ¶ 58. The order vacating the Collections Lawsuit is publicly accessible through the New York Unified Court System's eCourts website. *Id.* ¶ 71; Ex. I.

Over a year later, on November 11, 2015, Palisades, now represented by S&L,[4] sent an Information Subpoena and Restraining Notice (the "Notice") to JP Morgan Chase Bank ("Chase"). *Id.* ¶ 66; Ex. H. The Notice stated that Palisades had a judgment against Plaintiff for $2,834.13 and demanded that Chase restrain any bank accounts owned by Plaintiff. *Id.* Plaintiff had a consumer checking account and a savings account with Chase at that time. *Id.* ¶ 68. On November 16, 2015, Chase placed a hold on Plaintiff's checking account. *Id.* ¶ 69.

---

[4] S&L is a debt collection law firm that regularly sends collection letters, files lawsuits, and uses post-judgment remedies to collect consumer debt. *Id.* ¶¶ 11, 150(d).

The Notice was signed by Defendant Sharinn and listed the index number for the vacated Collections Lawsuit. *Id.* ¶ 66.[5] The managing attorney of S&L, Amanda Moreno ("Moreno") explained, in a 2014 deposition, the process S&L attorneys undertake to review a consumer's file before commencing debt collection activities. *Id.* ¶ 81. Moreno explained that, when a different law firm litigated the underlying judgment, S&L's policy was not to undertake debt collection activity until S&L had copied the entire court file or been forwarded the pleadings. *Id.* ¶ 83; Ex. J. According to Moreno, S&L "review[s] what is done by other attorneys to make sure that [they]'re following in the correct footsteps." *Id.* ¶ 84; Ex. J.

S&L was not the law firm of record in the Collections Lawsuit. *Id.* ¶¶ 61–62, 86. The law firm of record, Wolpoff & Abramson, was accused in a 2010 lawsuit of "perpetrat[ing] a massive scheme of debt collection fraud" and subsequently "abandoned a huge volume of pending debt collection suits in New York." *Id.* ¶¶ 60, 87. The process server who signed an affidavit of service in the Collections Lawsuit, Sarsour, was accused in a 2013 lawsuit of perpetrating sewer service.[6] *Id.* ¶¶ 34–35, 74. That lawsuit was brought against Palisades' parent company, Asta Funding. *Id.*; Ex. C; Ex. S. Had Sharinn or another attorney working for S&L copied the court file or researched the Collections Lawsuit before issuing the Notice, they would have seen that the Collections Lawsuit had been vacated in 2014. *Id.* ¶ 71; Ex. I.

On November 16, 2015, the same day Chase placed a hold on Plaintiff's account, $75.00 was debited from Plaintiff's checking account under the transaction heading "Nas-Coal 16 Nov15678." *Id.* ¶¶ 94–95; Ex. K. On November 25, 2015, Chase sent Plaintiff a letter

---

[5] Sharinn is the president of S&L. *Id.* ¶¶ 12, 150(f).

[6] "Sewer service" is the term used when a process server "fail[s] to serve the summons and complaint but still submit[s] proof of service to the court." *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 76 (2d Cir. 2015). The Second Circuit has described sewer service as "an ignominious practice which . . . provide[s] a fertile field for the fleecing of the poor and the disadvantaged." *Velazquez v. Thompson*, 451 F.2d 202, 204 (2d Cir. 1971).

explaining that there was a $5,668.26 hold placed on her account at the request of a judgment creditor. *Id.* ¶ 97. Chase also sent Plaintiff a copy of the Notice, as required by New York law. *Id.* ¶ 97–100; Ex. L. The letter Chase sent Plaintiff was labeled at the bottom left with the phrase "COAL-16Nov15-678." *Id.* Ex. L. The letter also explained that Chase "may charge [Plaintiff] a Legal Processing Fee of $75.00" for processing the Notice. *Id.*

Plaintiff never received a notice of assignment when Palisades purchased Plaintiff's alleged credit card debt from Direct Merchants Bank. *Id.* ¶ 91. Plaintiff also never received any notice of the Collections Lawsuit. *Id.* ¶ 31. The Notice forwarded to her by Chase was therefore the first communication she received from Palisades concerning the alleged debt. *Id.* ¶ 101. Plaintiff alleges that the Notice did not contain certain disclosures required by § 1692g(a) of the FDCPA. She also alleges that she did not receive those disclosures within five days of receiving the Notice. *Id.* ¶ 102.

When Plaintiff learned of the hold on her account, she was very upset. *Id.* ¶ 103. She needed the restrained money in order to pay her monthly bills, including her mortgage payment. *Id.* While Plaintiff's Chase account was restrained, she suffered emotional distress, including anger, frustration, and anxiety. *Id.* ¶ 136. She was afraid that late payments on her mortgage would increase her monthly mortgage to a level that she could not afford. *Id.* ¶ 140. Plaintiff also suffered from physical symptoms during this time period, including severe, recurring headaches, high blood pressure, a diminished appetite, and insomnia. *Id.* ¶¶ 142–43.

In November 2015, Plaintiff's daughter attempted to use the checking account to pay Plaintiff's monthly bills despite the hold; the payments did not go through and Plaintiff incurred additional "returned item fees" on her account. *Id.* ¶¶ 104, 109. Plaintiff went to a local Chase office multiple times to release the hold, but was told she needed to contact S&L. *Id.* ¶¶ 105–06.

At one point, a Chase employee transferred $2,100 to Plaintiff's savings account for her use. *Id.* ¶ 107. This transfer caused an insufficient funds fee to be charged to Plaintiff's account. *Id.* ¶ 109. The Chase employee also used funds from Plaintiff's savings account to pay her mortgage bill. *Id.* ¶ 107. Although the bill was paid, it was late, and Plaintiff incurred a late fee from her mortgage lender. *Id.* ¶ 110. Plaintiff was able to pay the remainder of her bills without using her bank account by using, among other methods, a Western Union wire transfer. *Id.* ¶ 111. Plaintiff alleges that this resulted in additional charges to her accounts. *Id.* On December 2, 2015, Chase debited an additional $937.01 from Plaintiff's account in a transaction labeled "NAS-COAL." She incurred an extended overdraft fee and a service fee from that debit. *Id.* ¶ 112.

Seeking to lift the hold on her account, Plaintiff retained CAMBA Legal Services, Inc. ("CAMBA") for assistance. *Id.* ¶ 114. On December 15, 2015, Plaintiff sent a letter to S&L informing them that the judgment in the Collections Lawsuit had been vacated and demanding the release of the restraint on her account. *Id.* ¶ 115; Ex. M. Plaintiff demanded that the S&L Defendants provide her with documentation and information on the alleged debt pursuant to the FDCPA and New York City laws. *Id.* Plaintiff also informed S&L that they should contact CAMBA regarding the debt in the future. *Id.* However, neither Palisades nor S&L responded to Plaintiff's letter. *Id.* ¶ 117. Because the hold remained on her Chase account, Plaintiff again paid her monthly bills "using unconventional means," which she alleges resulted in additional fees being charged to her accounts. *Id.*

On December 23, 2015, Chase sent Plaintiff a letter informing her that her account was overdrawn by $238.00 and that she needed to make a deposit in that amount to keep her account open. *Id.* ¶ 127. Chase sent another letter informing Plaintiff of her account status on or around

January 5, 2016. *Id.* Plaintiff did not deposit any money into her account because she believed that any additional funds she deposited would be frozen by Defendants. *Id.* ¶ 130. For this same reason, Plaintiff cashed her paychecks instead of depositing them at Chase, and was required to pay $6 for every check she needed to cash. *Id.* ¶ 135. She also believed that the overdraw was caused by the "NAS-COAL" debits of almost $1,000, the hold on her checking account, and the returned item and late fees incurred as a result of Plaintiff's attempts to remain in timely payment of her bills despite the hold on her account. *Id.* ¶ 130.

On January 8, 2016, Plaintiff checked her Chase account and saw that the hold remained. *Id.* ¶ 118. That day, a CAMBA employee called S&L and spoke with an attorney there, Mike Ponzio ("Ponzio"). Ponzio requested that CAMBA send S&L a copy of the vacatur of the Collections Lawsuit judgment. *Id.* ¶ 119. An attorney at CAMBA sent the letter on January 11, 2016, again demanding that S&L lift the restraint and return the funds to Plaintiff's Chase account. *Id.* ¶ 120. On January 13, 2016, an employee working for S&L faxed a letter to CAMBA informing them that S&L had reached out to Chase to withdraw the restraint on Plaintiff's account. *Id.* ¶ 122; Ex. P.

On January 27, 2016, S&L mailed CAMBA a letter enclosing a check to Plaintiff for $830.16, which they stated represented "monies received from the Marshal in connection with a levy at JP Morgan Chase Bank." *Id.* ¶ 124. S&L also informed CAMBA that an additional check for $106.85 would be sent to Plaintiff from the Marshal's office for additional Marshal fees. *Id.* On February 3, 2016, Plaintiff received a check for $106.85. *Id.* ¶ 126.

At some point after January 8, 2016, Chase closed Plaintiff's checking and savings accounts because Plaintiff's accounts remained overdrawn. *Id.* ¶ 131. After receiving the checks

from the Marshal's office and S&L, Plaintiff opened a new checking account at a different bank. *Id.* ¶ 132.

Plaintiff filed this lawsuit on November 11, 2016. Complaint (Doc. 1). Plaintiff filed the FAC on February 24, 2017 (Doc. 30). Plaintiff asserts three causes of action: (1) violations of the FDCPA, 15 U.S.C. §§ 1692c, 1692e, 1692f, and 1692g based on Defendants' Notice and restraint of Plaintiff's Chase account; (2) violations of New York General Business Law § 349 based on Defendants' conduct in connection with the Collections Lawsuit as well as the subsequent Notice and restraint of Plaintiff's Chase account; and (3) conversion based on Defendants' restraint of Plaintiff's Chase account. FAC ¶¶ 146–79.

Palisades filed its motion to dismiss or to strike on March 30, 2017. *See* Memorandum of Law in Support of Defendant Palisades' Motion to Dismiss and Motion to Strike ("Def.'s Mem.") (Doc. 32).

## II.    MOTION TO DISMISS

Palisades moves to dismiss the FAC on the following grounds: (1) Plaintiff failed to state a claim under the FDCPA because she did not allege that she was a "consumer" and that the alleged debt "meets the FDCPA definition," Def.'s Mem at 10; (2) Plaintiff failed to plausibly plead her FDCPA claim, Def.'s Mem. at 5; (3) Plaintiff failed to state a claim under Section 349, Def.'s Mem. at 6; and (4) Plaintiff failed to state a claim for conversion, Def.'s Mem. at 7.[7]

### A.    Legal Standard

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss

---

[7] Palisades also asserts that Plaintiff has failed to allege a basis for recovery of punitive damages in connection with her claim for conversion. Def.'s Mem. at 7.

pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 893 F.Supp.2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'" *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## B.     FDCPA

Congress enacted the FDCPA in 1977 in order to check "abusive, deceptive, and unfair" practices employed by debt collectors.  *Wiener v. Bloomfield,* 901 F. Supp. 771, 774 (S.D.N.Y. 1995).  The FDCPA was also meant to "eliminate the recurring problem of debt collectors dunning the wrong person."  *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 251 (S.D.N.Y. 2011) (quoting S. Rep. No. 95–382, at 4, *reprinted in* 1977 U.S.C.C.A.N. at 1699). The FDCPA generally prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.[8]  The Act also proscribes debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  *Id.* § 1692f.  Debt collectors are prohibited from communicating with third parties about the debt unless they meet the requirements of Sections 1692b or 1692c of the FDCPA.  *Id.* §§ 1692b, 1692c(b).  The FDCPA also requires that, within five days after the initial communication with a consumer in connection with the collection of any debt, debt collectors send the consumer a validation notice which provides certain information regarding the debt. *Id.* § 1692g.

Plaintiff argues that Defendants' actions violate Sections 1692c, 1692e, 1692f, and 1692g of the FDCPA.  FAC ¶ 151; Plaintiff's Memorandum of Law in Opposition to Palisades' Motion to Dismiss ("Pl.'s Mem.") (Doc. 42), at 10–17.  Palisades does not argue that Plaintiff has failed to state a claim for any violation in particular; instead, Palisades argues that all of Plaintiff's FDCPA claims should be dismissed for the same two reasons:  (1) Plaintiff did not adequately allege that she was a consumer; and (2) Plaintiff did not properly plead her FDCPA claims.

---

[8] For example, the Second Circuit has held that it is "false and misleading" for an attorney to send a collection letter using her professional letterhead or signature if she was not meaningfully involved in the determination that the letter should be sent.  *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir. 2003); *see also Clomon v. Jackson*, 988 F.2d 1314, 1320–21 (2d Cir. 1993) (same).

### 1.      Whether Plaintiff is a Consumer

"To state a[n] FDCPA claim, a plaintiff must show that:  (1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 Civ. 3760 (GBD), 2011 WL 347222, at *4 (S.D.N.Y. Feb. 1, 2011) (quoting *Carrington v. Chrysler Fin.*, No. 10 Civ. 1024 (NGG), 2010 WL 1371664, at *1 (E.D.N.Y. Apr. 6, 2010)).

Palisades argues that the FAC should be dismissed because the FAC does not specifically allege that Plaintiff is a consumer and does not state that the debt in question is consumer debt. Def.'s Mem. at 10.  Palisades is incorrect.  Plaintiff alleges that she is a consumer as defined by the FDCPA and that her alleged debt "derives from a credit card account that was used primarily for family, personal or household purposes."  FAC ¶ 150(a)–(b).  Plaintiff's allegations against Palisades are based on Plaintiff's alleged obligation to pay the debt subject to the Collections Lawsuit, and the FAC's allegations are sufficient to show that Plaintiff has standing to sue under the FDCPA.  *See also Marx v. General Revenue Corp.*, 568 U.S. 371, 374 n.1 (2013) ("The FDCPA's private-enforcement provision, § 1692k, authorizes any aggrieved person to recover damages from 'any debt collector who fails to comply with any provision' of the FDCPA.") (quoting 15 U.S.C. § 1692k(a)).

### 2.      Whether Plaintiff Properly Plead her FDCPA Claims

Next, Palisades argues that Plaintiff failed to properly plead her FDCPA cause of action because she did not specify which factual allegations supported each alleged FDCPA violation. Def.'s Mem. at 11.  To comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, pleading rules "do not

countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014). Dismissal of a

complaint for failure to comply with Rule 8 "is usually reserved for those cases in which the

complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if

any, is well disguised." *Shomo v. State of New York*, 374 F. App'x 180, 182 (2d Cir. 2010)

(quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). Instead, "the key to Rule 8(a)'s

requirements is whether adequate notice is given." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d

Cir. 2004).

Palisades argues that Paragraph 151 "claims that the Defendants violated the FDCPA §§

1692c, 1692e, 1692f, and 1692g . . . and then alleges nothing more than descriptive language

from the aforementioned sections of the FDCPA." Def.'s Mem. at 11. Paragraph 151, in its

entirety, states:

> Defendants materially violated the following sections of the FDCPA: 15 U.S.C. §§ 1692c, 1692e, 1692f, 1692g. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: failing to provide Ms. Hunter with required information about an alleged debt in response to her request for verification; using false, deceptive, or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; making the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive, or misleading representations or means; using unfair or unconscionable means; communicating improperly with a third party; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

FAC ¶ 151. The first of Plaintiff's "example[s]"—that Defendants failed to provide Plaintiff with information in response to her request for verification—is the only example that includes any sort of factual allegation. The other allegations provide a mere "recitation of behavior prohibited by various sections of the FDCPA." *Okyere v. Palisades Collection LLC,* 961 F. Supp. 2d 508, 515 (S.D.N.Y. 2013). Where complaints go no further than those sorts of "threadbare recitals of the elements of a cause of action," they should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Oliver v. U.S. Bancorp*, No. 14 Civ. 8948 (PKC), 2015 WL 4111908, at *5 (S.D.N.Y. July 8, 2015) (dismissing FDCPA complaint where the plaintiff provided only "a formulaic recitation of acts prohibited by the FDCPA, without any alleged factual content" in support of her claim).

However, taken as a whole, the FAC contains allegations that meet Rule 8's notice pleading requirements. The FAC alleges in the FDCPA section itself that even after Plaintiff vacated the Collections Lawsuit judgment, Palisades continued to attempt to collect the debt by securing a restraint on Plaintiff's Chase account and refusing to release the restraint after being notified of the error. *See* FAC ¶ 147; *see also id.* ¶¶ 66–93; 100–02; 115–22 (providing a more detailed factual overview of Plaintiff's claims).[9] Further, in Plaintiff's opposition, she explained the legal theory (and supporting factual allegations) behind each of her claims for violations of Sections 1692c, 1692e, 1692f, and 1692g. Pl.'s Mem. at 10–17; *see also Okyere*, 961 F. Supp. 2d at 515 (finding a similarly constructed complaint satisfied Rule 8 requirements when read in conjunction with the plaintiff's brief in opposition to a motion to dismiss). These allegations, although not presented with perfect clarity in the FAC, are not so confusing that their "true

---

[9] Additionally, Plaintiff specifically invoked Palisades' failure to fulfill the requirements of an "initial communication" under § 1692(g) and the lack of "meaningful review" conducted by Palisades' attorneys of the Collections Lawsuit, in violation of § 1692e(3). *Id.* ¶¶ 78–92; 100–02.

substance . . . is well disguised." *Shomo*, 374 F. App'x at 182; *see also Carlson v. Long Island Jewish Med. Ctr.*, 378 F. Supp. 2d 128, 133 (E.D.N.Y. 2005) ("While Plaintiffs certainly could have pled their claim with greater specificity, there is no requirement that they do so, and in the context of this motion to dismiss, the court declines to hold the pleading deficient.").

Finally, Palisades argues that Plaintiff's allegations do not state a claim upon which relief can be granted because "so much of the substance of Plaintiff's Complaint is devoted to events which occurred prior to November 11, 2015 . . . [h]owever the specific facts violating specific sections/subsections of the FDCPA are unknown." Def.'s Mem. at 11. In the section outlining Plaintiff's FDCPA causes of action, Plaintiff succinctly presented her allegations with respect to the FDCPA claims: "Defendants attempted to collect on a judgment against Ms. Hunter that had been vacated in a debt collection lawsuit that had been dismissed, by restraining and garnishing her bank account, and then ignoring her demand that her funds be released. In doing so, Defendants violated multiple sections of the FDCPA." FAC ¶ 147. According to the FAC, Defendants' collection activities began on November 11, 2015—a date both parties agree is within the relevant statute of limitations. *See* FAC ¶ 66; Def.'s Mem. at 11–12; Pl.'s Mem at 17. Thus, the FAC adequately put Palisades on notice of which alleged conduct supported Plaintiff's FDCPA violation.

Because Palisades' only arguments with respect to the FDCPA claim concern whether Plaintiff was the object of collection activity and whether Plaintiff adequately pled her theories of liability, this Court DENIES Palisades' motion to dismiss Plaintiff's cause of action under the FDCPA.

## C.     Section 349

To state a Section 349 claim, a plaintiff must allege three elements: (1) "that the challenged act or practice was consumer-oriented;" (2) "that it was misleading in a material way;" and (3) "that the plaintiff suffered injury as a result of the deceptive act." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)). Palisades argues that Plaintiff's Section 349 claim should be dismissed because Plaintiff has not adequately alleged facts supporting the "consumer-oriented" and "materially misleading" elements.

### 1.     Whether Plaintiff Alleged Consumer-Oriented Conduct

Palisades argues that the FAC should be dismissed because Plaintiff did not specify that the debt at issue was a "consumer debt" as required under Section 349 in order for her to have standing to bring an action. Def.'s Mem. at 13. "[A]s a threshold matter, plaintiffs claiming the benefit of Section 349—whether individuals or entities . . . must charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). Claims arising under Section 349 need not allege "a repetition or pattern of deceptive behavior" so long as the conduct alleged "potentially affect[s] similarly situated consumers." *Id.* at 25, 26–27. This requirement "has been construed liberally" and the "critical question" is whether the conduct alleged in the complaint "affects the public interest in New York." *Agheepour v. N. Leasing Systems, Inc.*, 14 Civ. 5449 (NSR), 2015 WL 7758894, at *14–15 (S.D.N.Y. Dec. 1, 2015), *order corrected by* 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016).

In the FAC, Plaintiff alleged that Palisades "obtained a judgment against [her] via sewer service,"[10] "attempted to collect on a judgment that had been vacated," "refused to release [her]

---

[10] Palisades argues that Plaintiff did not allege "sewer service" in connection with her Section 349 claim and seeks to preclude Plaintiff from making any arguments about sewer service with respect to Section 349. Reply

bank account despite having been provided with incontestable evidence that the judgment had

been vacated," and that Palisades and the other co-Defendants "have engaged in a pattern of

attempting to collect on judgments . . . with no prior review and no meaningful attorney review."

*See* FAC ¶¶ 157–164.[11]  Numerous courts in the Southern District of New York have held "that

the persistent filing of fraudulent debt collection lawsuits against New York consumers does fall

within the scope of Section 349."  *Aghaeepour*, 2015 WL 7758894, at *15 (citing *Mayfield v.

Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015); *Sykes v. Mel Harris & Assocs.,

LLC*, 757 F. Supp.2d 413, 428 (S.D.N.Y. 2010); *Midland Funding v. Giraldo*, 961 N.Y.S.2d 743,

752 (Sup. Ct. 2013); *White v. Fein, Such & Crane, LLP*, No. 15 Civ. 438 (JTC), 2015 WL

6455142, at *6 (W.D.N.Y. Oct. 26, 2015)).  Here, Plaintiff's allegation that Palisades' prior law

firm "had been accused of fraudulent debt collection, and further had abandoned tens of

thousands of debt collection lawsuits" supports her argument that Palisades' alleged conduct did

affect or could affect a larger group of New York consumers.  FAC ¶ 162.  Thus, Plaintiff has

adequately alleged "consumer-oriented" conduct under Section 349.

---

Memorandum of Law in Support of Palisades' Motion to Dismiss ("Reply Mem.") (Doc. 43) at 9.  Palisades is wrong.  Paragraph 157, under the heading "Second Claim for Relief:  Violations of N.Y. Gen. Bus. Law § 349," reads:  "Defendants Palisades Acquisition obtained a judgment against Ms. Hunter via sewer service, by making false representations in sworn affidavits submitted to the court."  FAC ¶ 157.

[11] Section 349 has a three-year statute of limitations.  *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001).  Plaintiff's allegation that Defendant obtained a default judgment against her via sewer service in 2007 falls well outside the statute of limitations.  FAC ¶¶ 15–45, 154.  However, the Court finds that equitable tolling applies to those allegations.  Equitable tolling is appropriate where "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled."  *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 157 (2d Cir. 2014) (internal quotations omitted).  In this case, Plaintiff has alleged that Palisades concealed their debt collection activities from her through the use of sewer service.  *See e.g.*, FAC ¶ 154.  "Because sewer service purposefully ensures that a party is never served, it is plausible that defendants' acts were 'of such character as to conceal [themselves]' to warrant equitable tolling."  *Sykes v. Mel Harris and Assocs., LLC*, 757 F. Supp. 2d 413, 427 (S.D.N.Y. 2010) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349–50 (1874)).  Because Plaintiff discovered the default judgment shortly before February 24, 2014, FAC ¶¶ 47–52, and her initial complaint was filed on November 11, 2016, her claim under Section 349 is timely under equitable tolling.

### 1.     Whether Plaintiff Alleged Materially Misleading Conduct

Palisades further argues that Plaintiff alleges conduct that is neither materially misleading nor deceptive because "when Plaintiff received a letter . . . informing her that a hold had been placed on her checking account . . . she knew, or should have known, that the documents were related to the Judgment Collection Lawsuit which she successfully vacated."  Def.'s Mem. at 14.[12]  New York courts use an objective definition of "deceptive," which is "limited to those [acts] likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26.  As discussed above, Plaintiff's allegations encompass more than the allegedly unlawful restraint on her bank account:  Defendants are accused of obtaining a judgment against Plaintiff by "filing a false affidavit of service with the Court," FAC ¶ 23, and later of issuing a restraint on Plaintiff's bank account on the basis of a judgment that had been vacated. *Id.* ¶¶ 86–92.  In short, Plaintiff alleges that Defendants held themselves out as creditors of Plaintiff, when they knew or should have known that they were not.  This is precisely the type of conduct "likely to mislead a reasonable customer acting reasonably under the circumstances."  Even if Plaintiff herself thought she successfully vacated the judgment in 2014, seeing a hold on her account due to the Collections Lawsuit judgment would likely mislead her, or a reasonable consumer standing in her shoes, into believing the debt was still due. The restraint "purport[s] to collect a valid legal judgment when, in fact, the judgment had already

---

[12] Palisades also notes that Plaintiff's allegation that her discovery of the hold on her Chase account on November 25, 2015 "was the first time [Plaintiff] knew or could have reasonably known that the Collections Lawsuit was filed against her or that a default judgment was entered against her" is inconsistent with Plaintiff's other allegation that she learned of the Collections Lawsuit in 2014.  *Compare* FAC ¶ 99 *with id.* ¶¶ 48–53; *see also* Def.'s Mem. at 14. The Court agrees that the FAC is internally inconsistent on this point.  A court is not obliged to reconcile and accept as true "pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference . . . ." *Xi Wei Lin v. Chinese Staff & Workers' Ass'n*, No. 11 Civ. 3944 (RJS), 2012 WL 5457493, at *4 (S.D.N.Y. Nov. 8, 2012) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005).  Thus, in determining whether Plaintiff plead materially misleading conduct, the Court will not consider Plaintiff's allegation that she first learned of the Collections Lawsuit when she first learned of the hold on her account.

been vacated. . . . A reasonable consumer reading such a notice would likely be misled into believing that a valid court judgment existed and this belief could coerce a reasonable consumer into paying the judgment under the mistaken belief that they could be subject to even harsher penalties for failing to pay a valid legal judgment." *Martinez v. Lvnv Funding, LLC*, No. 14 Civ. 00677 (RRM) (ST), 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016). Thus, Palisades' Motion to Dismiss with respect to Plaintiff's Section 349 claim is DENIED.[13]

### D. Conversion

To state a claim for conversion in New York, a plaintiff must assert that she has a "possessory right or interest in the property" and that the defendant asserted "dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006). Palisades challenges the second element, arguing that Plaintiff's claim for conversion should be dismissed against it because "Palisades Acquisition is not vicariously liable for actions of its counsel in alleged violation of the law on conversion." Def.'s Mem. at 15. Under New York law, "from the nature of the attorney-client relationship itself, an attorney derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural and tactical decisions." *Hallock v. State of New York*, 64 N.Y.2d 224, 230 (1984) (concluding that a client was bound by her attorney's decision to enter into a settlement without her consent because he had the apparent authority to act on her behalf). Lawyers are generally regarded as agents of their clients in pursing litigation and other legal activities. *See* Restatement (Third) of the Law Governing

---

[13] Palisades seems to argue, in its Reply Memorandum, that "Plaintiff has not plead that Palisades . . . would be liable for violations of the NYGBL § 349 if the S&L Defendants were held liable." Reply Mem. at 7. To the extent that Palisades moves to dismiss Plaintiff's Section 349 cause of action on the grounds that it is not vicariously liable for its attorneys' debt collection activities on its behalf, such an argument was raised for the first time on reply and will not be considered. *See Mohamed v. Nolan Law Group*, 574 F. App'x 45, 46 n.1 (2d Cir. 2014) ("[W]e will not consider an argument raised for the first time in a reply brief . . . .") (quoting *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003)).

Lawyers § 26 cmt. B (2000).  Under traditional principles of agency, a principal is liable for the actions of his agent "when the agents are acting 'in the scope of their authority.'"  *Plummer v. Atlantic Credit & Finance, Inc.*, 66 F. Supp. 3d 484, 493 (S.D.N.Y. 2014) (quoting *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 515–16 (S.D.N.Y. 2013)).

Here, although Plaintiff's factual allegations are sparse, she has made a plausible claim that Palisades is vicariously liable for the actions of S&L in its collection activities against her. The FAC alleges that the basis for the restraint placed on Plaintiff's account was the default judgment Palisades had obtained in the Collections Lawsuit.  FAC ¶ 66; Ex. H.  The FAC also alleges that S&L purports to be "the attorney for Palisades in the collections lawsuit."  *Id.* ¶ 63. Most importantly, it alleges that "Palisades Acquisition acts through the S&L Defendants for the collection of . . . judgments."  *Id.* ¶ 13.  The FAC, therefore, sufficiently alleges that S&L's actions were done within the scope of S&L's authority as an agent for Palisades.  *See also Plummer*, 66. F. Supp. 3d at 493–94 (finding a debt collector could be vicariously liable for the unlawful debt collection activities of its agent); *Okyere*, 961 F. Supp. 2d at 515–17 (collecting cases on vicarious liability of debt collectors and finding that debt collectors may be vicariously liable for the actions of their attorneys).  Therefore, Palisades' motion to dismiss the conversion claim against it is DENIED.

Separately, Palisades seeks to dismiss Plaintiff's claim for punitive damages under her cause of action for conversion, claiming that "nothing the Defendants did can be described as having a fraudulent or evil motive or wanton disregard for Plaintiff's rights."[14]  Def.'s Mem. at

---

[14] On page 7 of its opening memorandum, Palisades states that Plaintiff "failed to sufficiently allege a basis to recover punitive damages under the NYGBL § 349 and/or Conversion."  Def.'s Mem. at 7.  However, in Palisades' further discussion of punitive damages in its opening and reply briefs, Palisades only mentions punitive damages in connection with conversion.  *See* Def.'s Mem. at 16; Reply Mem. at 10.  To the extent that Palisades still seeks to prevent Plaintiff from seeking punitive damages with respect to her Section 349 claim, that is denied for the same reasons stated above with respect to Plaintiff's conversion claim.

16. Because punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is "procedurally premature." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 536 (S.D.N.Y. 2013); *see also Denton v. McKee*, 332 F. Supp. 2d 659, 667 (S.D.N.Y. 2004) (same).

## III.    MOTION TO STRIKE

### A.    Rule 12(f) Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.  Fed. R. Civ. P. 12(f). Allegations may be stricken "where they have no bearing on the parties' claims or defenses, will likely be prejudicial, or where they have criminal overtones."  *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 731 (S.D.N.Y. 2014) (citing *Aventis Envtl. Sci. USA LP v. Scotts Co.*, No. 99 Civ. 4015 (LAP) (THK), 2003 WL 1787295, at *2 (S.D.N.Y. Apr. 3, 2003)).  However, "the standard that must be met in order to strike material is 'a stringent one.'" *TouchTunes Music Corp. v. Rowe Int'l Corp.*, No. 07 Civ. 11450 (RWS), 2010 WL 3910756, at *4 (S.D.N.Y. Oct. 5, 2010) (quoting *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, No. 03 Civ. 15 (RWS), 2007 WL 1687044, at *3 (S.D.N.Y. June 11, 2007)).  "[I]t is settled that the motion [to strike] will be denied, unless it can be shown that no evidence in support of the allegation would be admissible."  *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976); *see also TouchTunes Music Corp.*, 2010 WL 3910756, at *4 ("A motion to strike immaterial or impertinent matter from a pleading will ordinarily not be granted unless the matter sought to be stricken clearly can have 'no possible relation' to the matter in controversy.") (quoting *Gleason v. Chain Serv. Rest.*, 300 F. Supp. 1241, 1257 (S.D.N.Y. 1969), *aff'd* 422 F.2d 343 (2d Cir. 1970)).

### B. Discussion

Palisades moves to strike Exhibits C and S to the FAC. Exhibit C is the amended class action complaint in *Bernhart v. Asta Funding, Inc.*, 13 Civ. 2935 (RPP). Exhibit S is a Form 10-K Annual Report submitted by Asta Funding, Inc. for the fiscal period that ended on September 30, 2010. Palisades argues that Exhibit C "is completely irrelevant to Plaintiffs [sic] liability and damages claims" and notes that there is no overlap in parties between the instant matter and *Bernhart*. Def.'s Mem. at 17. With respect to Exhibit S, Palisades argues that the annual report is irrelevant to Plaintiff's allegation that Defendants unlawfully attempted to execute a vacated judgment against Plaintiff. *Id.* at 18. Plaintiff responds that both documents "show that Palisades is part of a corporate apparatus with a history of perpetrating sewer service against numerous consumers, in conjunction with the very process server who falsely swore to serving Ms. Hunter with the papers in the collections lawsuit," which she argues supports the consumer-oriented prong of her Section 349 claim. Pl.'s Mem. at 29.

Although Rule 12(f) allows a Court to strike "immaterial" matters from a pleading, "[c]ourts should not tamper with the pleadings unless there is a strong reason for doing so." *Lipsky*, 551 F.2d at 893. Because "the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial," courts should be especially reticent to wade into evidentiary issues on the basis of the pleadings alone. *Id.* In this case, both the FAC and Exhibit C contain allegations of sewer service perpetrated by Sarsour. *See* FAC ¶¶ 22–36; Ex. C ¶¶ 381–89. The *Bernhart* complaint was filed in 2013, eighteen months before Defendants allegedly unlawfully restrained Plaintiff's bank account. Exhibit S shows that Palisades is the subsidiary of Asta Funding, and related to Palisades Collections LLC, two of the defendants in *Bernhart*. The existence of allegations of impropriety against a process server used by Palisades

(and related entities) may ultimately be relevant in three respects: (1) Palisades' knowledge of allegations of impropriety against one of its process servers could bear on the level of review required under 15 U.S.C. § 1692e(3) before issuing a restraint; (2) Palisades' knowledge of allegations of impropriety against one of its process servers and against similar entities could inform whether or not their actions in this case were "reckless" or "willful," as required for the award of punitive damages Plaintiff seeks under both her Section 349 and conversion claims; and (3) the existence of similar allegations of misconduct could support Plaintiff's argument that Palisades' actions in this case had the "potential to affect similarly situated consumers," as required for Plaintiff's Section 349 claim. The Court declines to rule on the eventual admissibility of Exhibit C, Exhibit S, or similar evidence at this time; however, because striking part of a pleading requires a finding that "no evidence in support of the allegation would be admissible," the Court will not strike the exhibits at this time. *See In re OSG Sec. Litig.*, 12 F. Supp. 3d 619, 621–22 (S.D.N.Y. 2014) ("While allegations from another lawsuit are not evidence . . . plaintiffs need not provide admissible proof at [the pleadings] stage."). Palisades' motion is DENIED.

## IV.    CONCLUSION

Palisades' motion to dismiss pursuant to Rule 12(b)(6) or to strike pursuant to Rule 12(f) is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 31.

It is SO ORDERED.

Dated:    November 16, 2017
          New York, New York

Edgardo Ramos, U.S.D.J.