

The Chrysler Building
405 Lexington Avenue | New York, NY 10174-0208
blankrome.com

*Phone:* (212) 885-5118
*Fax:* (917) 332-3078
*Email:* hkorman@blankrome.com

October 16, 2018

**By ECF**
Honorable Edgardo Ramos
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:    *Hunter v. Sharinn & Lipshie, P.C. et al*, Case No. 16-cv-08779 (ER)
             TRAKAmerica's Opposition to Plaintiff's Request for a Local Rule 37.2 Conference

Dear Judge Ramos:

This office represents Data Search NY, Inc. d/b/a TRAKAmerica ("TRAK") in connection with a subpoena served by Plaintiff, dated August 30, 2018. This letter is submitted in opposition to Plaintiff's request for a Local Civ. R. 37.2 pre-motion conference to enforce the subpoena. [DE No. 77.]

    I.    Background and Argument.

The facts alleged in the Second Amended Complaint are straightforward. In 2007, Palisades Acquisition XVI, LLC ("Palisades") obtained a judgment against Plaintiff for a credit card debt through the law firm of Wolpoff & Abramson, LLP ("W & A"). Sometime after 2010, when W & A closed, Sharinn & Lipshie, P.C. ("S & L"), a law firm, was engaged to enforce that judgment. S & L did not file a consent to change attorney form with the court and was not notified when Plaintiff successfully moved to vacate that judgment in 2014. Plaintiff failed to serve S & L or Palisades with that motion. S & L proceeded to enforce the judgment in 2015, and ceased its efforts in 2016 when Plaintiff so advised.

TRAK is a non-party debt forwarder. It does not collect debt from consumers, and instead acts as an intermediary. On or around 2010, it placed Palisades' judgment with S & L for enforcement. On or around September 5, 2018, TRAK was served with a copy of Plaintiff's subpoena. It provided responses and objections on September 18, 2018, even though an initial

October 16, 2018
Page 2

conference had not been had and a discovery schedule not yet set.[1] [DE No. 77-1 to 77-2.]

Among other things, the subpoena did not have time limitations and sought documentation that was privileged, confidential, irrelevant, overbroad, proprietary, and discoverable from the parties. Nonetheless, TRAK produced its internal activity notes, screenshots of its files, and a redacted copy of the Legal Services Agreement between TRAK and S & L ("the LSA"). The produced documents demonstrate S & L's contractual obligations in connection with the enforcement of Plaintiff's judgment, and TRAK's (and, by extension, Palisades') lack of knowledge about the judgment's vacatur in 2014. [DE No. 77-2.] Among other things, the LSA indicated that S & L's services "shall comply with all applicable Federal, State, County, and local laws, regulations, ordinances, and codes, including, but not limited to, the Fair Debt Collections Practices Act and the Fair Credit Reporting Act and the procurement of any licenses" and that S & L was "required to perform a search/scrub on each account including, but not limited to, bankruptcy, deceased, active military duty, *or any other such disposition that limits the ability of [S&L] to proceed with collection or litigation on Accounts placed by TRAKAmerica prior to initiating collection efforts or filing suit."* See LSA at Exhibit A.

Despite this, as set forth in Palisades' letter to the court, dated September 13, 2018 [DE No. 69], Plaintiff's counsel's goal (as has been noted by several judges in this Court) is to abuse the discovery process for leverage, regardless of what is proportional to the claims. No amount of discovery will ever be enough.

1. *Agreements Governing Collection.*

The redacted portions of the LSA contain confidential, privileged, and proprietary information about TRAK and its clients' business practices, strategies, and financial arrangement with S & L—all of which are irrelevant to Plaintiff's claims. TRAK is amenable to the Court's in camera review to confirm this. *See Sokol v. Coombe*, 1995 WL 301349 (S.D.N.Y. May 16, 1995). TRAK's concerns exist not only to prevent the disclosure of its (and its clients') business practices from the public, but also from consumer attorneys like Plaintiff's who regularly sue its clients and members of the accounts receivable management community. This concern is underscored by Plaintiff's conduct in this case, where she is attempting to use testimony they received by S & L in other cases against it. (For example, *see* Second Amended Complaint, DE no. 75, ¶¶ 81-84.) *See also Lucas v. Gold Standard Baking, Inc.,* No. 13 CV 1524, 2017 WL 3394726, at *3 (N.D. Ill. Aug. 8, 2017) ("Having reviewed the Corral retainer agreement in camera, the court finds that the paragraph regarding the scope of representation in the retainer agreement, as well as the

---

[1] This is Plaintiff's third attempt to subpoena TRAK. TRAK provided responses and objections to the third subpoena for the sake of avoiding the costs and burden of objecting to additional deficient subpoenas from Plaintiff.

153767.01200/113395956v.1

BLANKROME

agreement date, are relevant to this case, but the rest of the retainer agreement is either privileged because it includes prosecution strategy not related to this case or not relevant to the claims or defenses alleged in this case.")

    2. *Communications among Defendants and TRAK.*

As described above, the documentation TRAK provided conclusively establishes that S & L never advised that the judgment that had been placed with it in 2010 had been vacated (in 2014) until 2016, and TRAK and Palisades had no reason to believe otherwise. Despite this, Plaintiff insists that TRAK, as a non-party, is obligated to produce "all communications among Defendants, TRAK, and other intermediaries to support her claim that Defendants violated the FDCPA by failing to conduct a meaningful attorney review."

As an initial matter, it is axiomatic that a third party should not be compelled to respond to a subpoena for documents that could and should be obtained from parties. *See Roth v. County of Nassau*, 2017 WL 75753, at *6 (E.D.N.Y. Jan. 6, 2017) (quashing subpoena to the extent it sought plaintiff's "current compensation and benefit information" from his employer, where the same information could be obtained from plaintiff himself); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 70 (E.D.N.Y. 2010) ("The relevant information sought by Defendant in the Subpoenas can be obtained from whatever records Plaintiff has in his possession or control as well as through Plaintiff's deposition."); *Fears v. Wilhelmina Model Agency, Inc.*, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) ) ("[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party."); *N'Diaye v. Metro. Life Ins. Co.*, No. 17CV4260GBDBCM, 2018 WL 2316335, at *8 (S.D.N.Y. May 8, 2018) (ruling that party must obtain documents parties prior to attempting to obtain them from a non-party).

Secondly, neither TRAK nor Palisades are attorneys that are subject to a "meaningful attorney review" requirement. The documents which Plaintiff seeks could only be in S & L's possession. Also, the LSA makes clear that S & L was expected to comply with all laws and ensure that the appropriate search or scrub was conducted prior to collecting. Plaintiff's thinly-veiled excuse is nothing more than a fishing expedition for the purpose of harassing TRAK and increasing her settlement leverage and attorneys' fees.

    3. *Codes and abbreviations.*

TRAK's subpoena responses clearly indicate that it does not have a key or other document to produce. [DE 77-1.] The furnishing of an affidavit was never discussed, nor is it a requirement

under Rule 45.  As a courtesy, the undersigned offered to obtain responses to any specific inquiries of abbreviations by email, both before and after this application was filed, but Plaintiff's counsel has refused to do so.  Instead, Plaintiff's counsel threatened to depose TRAK for the information and then filed this application.

    4.   *Privacy objections.*

Which TRAK employees reviewed or handled Plaintiff's account has no bearing on whether S & L filed a consent to change attorney form or enforced a judgment that had been vacated—information never reported to TRAK or Palisades until 2016 (as demonstrated by the documents produced by TRAK and Palisades).  Again, Plaintiff's thinly veiled justifications are nothing more than an attempt to harass TRAK and drive up Plaintiff's attorneys' fees and settlement leverage.  Plaintiff has already attempted to depose every single person at S & L that was involved in the collection of Plaintiff's account—even the attorneys that ultimately released Plaintiff's bank restraint.  There is no doubt that Plaintiff will do the same with TRAK's employees, and, as a non-party without relevant information, TRAK's employees' identities must be protected.

Thank you for your consideration of the foregoing.

Respectfully submitted,

**BLANK ROME LLP**

By: /s/ *Hilary F. Korman*
    Hilary F. Korman, Esq.
    Scott E. Wortman, Esq.
    The Chrysler Building
    405 Lexington Avenue
    New York, New York 10174
    (212) 885-5118